## Case No. 1,483.

### BLAIR v. ALLEN.

[3 Dill. 101.][1]

Circuit Court, E. D. Missouri. 1874.

TRIAL — ACT MARCH 3, 1865 — WAIVER OF JURY TRIAL—SPECIAL FINDING OF FACTS — MODE OF REVIEWING JUDGMENTS AT LAW OF THE DISTRICT COURT.

1. The act of March 3, 1865, (13 Stat. 501, § 4), as to waiving a jury and trying issues of fact by the court, applies exclusively to the circuit courts. Its provisions do not extend to the district courts.

[Cited in Wear v. Mayer, 6 Fed. 660; Town of Lyons v. Lyons Nat. Bank, 8 Fed. 373; Rogers v. U. S., 12 Sup. Ct. 94.]

2. The manner in which the proceedings and judgments of the district courts in actions at law must be revised and re-examined on error in the circuit court. [They cannot be so reviewed upon a writ of error where the facts are controverted, and no case is stated in the nature of a special verdict for the opinion of the district court as to the law arising thereon.]

[Cited in Wear v. Mayer, 6 Fed. 660; Town of Lyons v. Lyons Nat. Bank, 8 Fed. 373; Doty v. Jewett, 19 Fed. 338; Jackson v. U. S., 21 Fed. 36; Rogers v. U. S., 12 Sup. Ct. 94.]

3. A bank holding an indorsed note may, it seems, set off the same against the general deposit account of the maker.

[Cited in Robinson v. Wisconsin, M. & F. Ins. Co. Bank, Case No. 11,969.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[In error to the district court of the United States for the eastern district of Missouri.]

This was an ordinary action at law by the plaintiff [Joseph H. Blair], as assignee in bankruptcy of one Husbands, under section 35 of the bankrupt act, to recover the sum of $1,600, alleged to have been paid to the defendant [Gerard B. Allen] or for his benefit by the bankrupt in violation of the provisions of that enactment. The substantial allegations of the petition were denied by the answer. In the district court the partner filed a stipulation waiving a jury and consenting to try the cause by the court.

The finding of the court as appears of record was as follows: "The court being fully advised now finds the issues joined herein for the defendant, and orders that judgment in accordance with such finding be now entered herein. It is therefore considered," &c. (here follows an ordinary judgment for the defendant).

Afterwards a bill of exceptions was filed, which, after setting out all the evidence, contains the following stipulations: "It is hereby stipulated by the parties that the opinion of the court, Treat, J., may be read in the circuit court on the hearing of this writ of error to show the finding of facts by the court and its rulings thereon" (which stipulation is signed by the parties). "Thereupon" continues the bill of exceptions, "the court took the case under advisement, and on the 3d day of March, 1874, found for the defendant and gave judgment accordingly, to which the plaintiff then and there duly excepted." This is all of the bill of exceptions. The parties have filed in this court as part of the record what they agree to be a copy of the opinion of Treat, J., which is as follows:

"The defendant was accommodation indorser of the bankrupt on a note discounted and held by the Mercantile Bank prior to and after the bankruptcy. On the day the note matured the maker informed the indorser that he (the maker) would be unable to pay the whole of the note, but could pay part, and in a short time from collections would pay the balance. He promised out of his funds on deposit with the bank to pay $1,000 on the note that day. The indorser said he would see the officers of the bank and arrange the matter. He did so, waiving notice and protest. The maker went to the bank the same day and paid, by check on his deposit, not $1,000 as agreed, but $800, which payment was indorsed on the note.

"Subsequently the indorser inquired at the bank if the balance due on the note had been paid, and was informed that only the $800 had been paid. He then inquired what amount the maker had on deposit, and was informed about $1,100. Thereupon he went to the maker and insisted that out of the amount the latter had on deposit he should apply a further sum toward the payment of the note. The maker said he had been

advised that he had done wrong in making any payments as it would work injustice to the indorser and the bank. The indorser said that he, the debtor, had been badly advised, and insisted on his making out of his funds on deposit in the bank, a further payment on the note. The maker then gave his check on his deposit at the bank for $800, payable to the order of the bank, to be applied to the note, which check the indorser took to the bank and had that sum also credited on the note. It seems that when the first payment on the maturity of the note was made, the accommodation indorser was induced to believe that the maker would, in a short time thereafter, if a little indulgence were granted, be able to pay in full, and as the indorser's ability to pay was unquestioned, the latter was left to arrange with the bank for the indulgence.

"In the state of the pleadings, and under the testimony offered, it may be doubtful to what extent the defendant was informed and charged with knowledge of the true financial condition of the maker of the note; but supposing he knew that the maker of the note was embarrassed, so that he requested as a merchant indulgence, in order to meet his maturing and matured obligations; that he was actually insolvent and disclosed his condition to his accommodation indorser, a question is presented in this case which differs from any heretofore decided. If a maker of a note has on deposit with the owner and holder thereof a given sum of money, which the latter has a right to retain and apply to the payment of the note, or use by way of set-off, and such application is made by the maker, even at the instance of the accommodation indorser, can the assignee in bankruptcy, if the maker is subsequently adjudicated a bankrupt, receive from the indorser the amount so paid?

"The bank holding the past due note with liability of indorser fixed, and at the same time having funds of the maker in their hands would, if it subsequently sued, without bankruptcy intervening, or proved its demand in bankruptcy, be entitled to recover or prove only the balance due it. It would not be bound to sue or prove for the whole amount of the note, to-wit:—$3000, and give no credit for the $1600 in its hands. The balance due it would be $1400, and it could not recover for a larger amount. Should it pay to the maker, no bankruptcy intervening, the $1600 on deposit, and then insist upon the indorser paying the whole $3000, what equity would there be in such a transaction in compelling the indorser to pay the entire amount and then turning over to the maker the $1600 which ought to have been applied to the discharge of the indebtedness? If in such a state of the case, the indorser should be held for only the balance, how does the subsequent intervention of bankruptcy change the legal relations of the parties?

"The case of Assignees of Lugman &

Frank v. Thorner [Ahl v. Thorner, Case No. 103] is readily distinguishable from that now under consideration, even if its ruling be correct. In the case of Bean v. Laflin [Case No. 1,172] different legal views were expressed, but the point now in controversy was ex industria left undecided. In Traders' Nat. Bank v. Campbell, 14 Wall. [81 U. S.] 87, 97, the supreme court allude to the point involved in the matter now to be determined. That court says: 'It ($928.38) was received on collections made by the bank from drafts placed by the bankrupts in their hands in the ordinary course of business, and if they had retained them and appropriated it as a set-off against the debt of the bankrupt to them, an interesting question might have arisen as to their right to do so. But instead of doing this, they handed it over to the sheriff, who levied on it as the property of the bankrupt, by virtue of the same execution under which he levied on and sold the goods. By the act of the bank it was thus placed in the same category with the goods, and instead of exercising their own right of set-off by directing the sheriff to credit the execution with the sum received by them on the debt, they delivered it to him to be treated as the goods of the bankrupt, and subjected by him to their illegal judgment. This amount then must be treated in the same manner as the other money received by them from the sheriff on the sale of the goods.'

"That is the question here as to the second payment of $800 out of funds deposited after the first payment on the note due, and to some extent as to the first payment of $800 out of deposits on hand at the maturity of the note.

"Since the decision in [Traders' Nat. Bank v. Campbell] 14 Wall. [81 U. S. 87] the supreme court has decided the case of Wilson v. City Bank of St. Paul [17 Wall. (84 U. S.) 473]. The decision in that case calls on the district and circuit courts to review their opinions upon the true construction of sections 35 and 39 of the bankrupt act, where preferences are actually obtained. True, that case does not cover nor necessarily involve the precise question now under review, yet it indicates that the presumptions on which the district and circuit courts have heretofore acted, as ordinary propositions of law, are not to be followed and applied to alleged preferences under the bankrupt law. In Bean v. Laflin, this court expressed its dissent from many rulings had elsewhere, where indorsers were involved, and gave somewhat at length its views upon the subject. It is not to be supposed, as stated in that case, that the ordinary rules of the law merchant were intended to be overthrown by the bankrupt act, but that negotiable paper, instead of losing any of its force connected with banking operations, or otherwise, was to be more strictly upheld.

"The relations of maker, indorser, and holder of such paper are well understood. When the position of each is fixed, shall any

one of the three parties do an act whereby either of the parties is to be prejudiced? The primary duty is for the maker to pay, and if the holder has funds in his hands applicable to the payment, can he withhold their application after request to apply the same and compel the indorser to pay, what, if the holder had acted as requested, would not have remained unpaid?

"Funds in the hands of the holder, belonging to the maker, or coming into his hands while he still holds the negotiable paper unpaid, he is at liberty to apply to the discharge of the paper, or rather ought, as between himself and the indorser, so to apply. In a suit against the holder for the funds deposited with him, he could set off the amount due on the note, and why shall he part with these funds when requested to apply them to the payment of the note, and thus shift the payment to the indorser, regardless of the state of indebtedness between holder and maker? In such cases is not the indorser in the position solely of surety for the balance due, and has he not a right to insist upon such application of funds on deposit as will leave him to pay only the balance due? How otherwise can the equities of the bankrupt act and the law merchant as to negotiable paper and of sureties be reconciled?

"In this case, under the facts disclosed, the bank had a legal right to make the application named, at the instance of the maker or indorser, irrespective of the solvency or insolvency of the maker.

"As the bank could retain and apply the deposits, and as it did so, whether at the instance of the indorser or not, the note to the extent of such application must be considered as paid and extinguished. In one sense the bank was benefited by the payment, and so was the indorser; but neither the one nor the other was bound to meet more than the balance due, that is to surrender or cause to be surrendered, funds applicable to the particular payment any more than a secured creditor is bound to surrender his collaterals for the benefit of the general creditors.

"It is true there is difficulty in any solution of such cases which may be attempted, but that now presented seems to me the only sound one consistent with legal propositions."

J. H. Blair and G. M. Stewart, for plaintiff.
Krum & Patrick, for defendant.

DILLON, Circuit Judge. This was an action of law tried by consent by the court upon testimony adduced by both parties, and which is embodied at length in the bill of exceptions. The facts, so far from being admitted by the parties in the court below, were disputed. After the trial was concluded the court rendered a general judgment for defendant, and accompanied it with a written opinion stating therein its

view of the facts and the law thereon arising. The parties stipulated in the court below that the written opinion of the judge might be read in this court on the writ of error, to show the finding of facts by the district court and its rulings thereon. This was probably done under the supposition that the act of March 3, 1865 (13 Stat. 501, § 4), applied to the district court as well as to the circuit court of the United States. Such however, is not the case, which, as it is a very useful enactment, is much to be regretted. The purpose and effect of this statute plainly appear in opinions of the supreme court in the cases below cited. Norris v. Jackson, 9 Wall. [76 U. S.] 125; Louisiana Mut. Ins. Co. v. Tweed, 7 Wall. [74 U. S.] 44; Flanders v. Tweed, 9 Wall. [76 U. S.] 425; Phoenix Ins. Co. v. Copelin, Id. 461; Coddington v. Richardson, 10 Wall. [77 U. S.] 516. It follows that rulings and judgments of a district court in actions at law can only be re-examined and revised by the circuit court on error, in the mode which obtained before the statute of March 3, 1865, and that mode is so well settled by the supreme court of the United States, that it is needful only to refer to a few of the numerous cases on this subject. Guild v. Frontin, 18 How. [59 U. S.] 135; Graham v. Bayne, Id. 60; Flanders v. Tweed, 9 Wall. [76 U. S.] 425; Campbell v. Boyreau, 21 How. [62 U. S.] 223.

In the case last cited the chief justice states the doctrine of the court and the grounds upon which it rests. He says: "By the established and familiar rules and principles which govern common law proceedings, no question of law can be revised and re-examined in an appellate court upon writ of error (except only where it arises upon the process, pleadings, or judgment in the case), unless the facts are found by a jury by a general or special verdict, or are admitted by the parties upon a case stated in the nature of a special verdict stating the facts and referring the questions of law to the court. The finding of issues of fact upon the evidence is altogether unknown to a common law court, and cannot be recognized as a judicial act unless by virtue of a statute like that of 1865."

As the facts in the present case were controverted, and as no case was stated in the nature of a special verdict for the opinion of the district court as to the law arising thereon, it follows that no error of law committed by the district court appears of record. If we could act upon the stipulation of the parties that the facts of the case are stated in the opinion of the district judge (as was done under the statute of 1865 in Louisiana Mut. Ins. Co. v. Tweed, 7 Wall. [74 U. S.] 44) the judgment below would still have to be affirmed.

There is no distinct finding and no stipulation of the parties that the defendant, when he received the payments or benefit of the payments which are alleged to give him an illegal preference, knew or had reasonable

cause to believe that the principal debtor was insolvent and that the payments were made in fraud of the bankrupt act, and without this, an essential element of liability is wanting.

The result is that the judgment must be affirmed without looking into the merits of the case. This is the less to be regretted because taking the facts as stated by the court below in its opinion the bank would have had the right to set off the note against the deposit (Bankrupt Act, § 20; Alsager v. Currie, 12 Mees. & W. 750; Bailey v. Finch, L. R. 7 Q. B. 34; Winslow v. Bliss, 3 Lans. 220; Sankey Brook Coal Co. v. Marsh, L. R. 6 Exch. 185), and other creditors or the assignee could not have objected. And unless the opinion of the supreme court in the Traders' Nat. Bank v. Campbell, 14 Wall. [81 U. S.] 87, 97, 98, decides differently, I should have been of the opinion that Husbands' consent to apply the money in the way the law would allow the parties to apply it, and his giving a check to that end, would not be fraudulent within the meaning of the act. Whether the case cited holds otherwise, it is not necessary, nor indeed proper, to inquire.

Judgment affirmed.