# NEW YORK COUNTY NATIONAL BANK *v.* MASSEY.

## APPEAL FROM THE CIRCUIT-COURT OF APPEALS FOR THE SECOND CIRCUIT.

### No. 90. Argued December 11, 1903.—Decided January 4, 1904.

The balance of a regular bank account at the time of filing the petition is a debt due to the bankrupt from the bank, and in the absence of fraud or collusion between the bank and the bankrupt with the view of creating a preferential transfer, the bank need not surrender such balance, but may set it off against notes of the bankrupt held by it and prove its claim for the amount remaining due on the notes. *Pirie* v. *Chicago Title & Trust Co.*, 182 U. S. 438, distinguished.

THE facts are stated in the opinion.

*Mr. Latham G. Reed*, with whom *Mr. John M. Bowers* was on the brief, for appellant:

The certification of his findings by a referee in bankruptcy and the findings themselves are as binding as are the findings of fact of any referee or single judge or the verdict of a jury, unless manifestly unquestionably erroneous. *In re Carver*, 113 Fed. Rep. 138; *In re Stout*, 109 Fed. Rep. 794; *In re Covington*, 110 Fed. Rep. 143; *Railway Co.* v. *Gordon*, 151 U. S. 285.

A finding of fact dependent upon conflicting testimony by a judge, or master or referee, who sees and hears the witnesses testify, has every reasonable presumption in its favor, and may not be set aside and modified unless it clearly appears that there was an error or mistake upon his part. *Tilghman* v. *Proctor*, 125 U. S. 149; *Callaghan* v. *Myers*, 128 U. S. 666; *Chauncey* v. *Dyke Bros.*, 9 Am. B. Rep. 470.

A set-off necessarily involves a preference. The relation

of a depositor in a bank with the bank itself is that of debtor and creditor. *Bank of Republic* v. *Millard*, 10 Wall. 152; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Thompson* v. *Riggs*, 5 Wall. 663; *Davis* v. *Elmira Savings Bank*, 161 U. S. 288; *Scammon* v. *Kimball*, 92 U. S. 362; Hill on Trustees, 4th Am. ed. 173; *Scott* v. *Armstrong*, 146 U. S. 499.

Transfers made in the usual and ordinary course of a trader's business, or payments made at the time a debt matures and in the usual mode of paying debts, are *prima facie* valid. *Bank* v. *Campbell*, 14 Wall. 97; *Driggs* v. *Moore*, 1 Abb. C. C. 440.

If a transfer is made in the usual and ordinary course of business of the bankrupt, the burden of proof will rest upon the assignee. *Collins* v. *Bell*, 3 B. R. 587; *Scammon* v. *Cole*, 3 B. R. 393.

The bank was bound to deduct the amount of the bankrupt's deposit from the face value of the notes and was entitled to prove its claim for the balance of the indebtedness, and for that only. Sec. 68 of the bankruptcy law.

The bankruptcy law itself gives and enforces the right and duty of set-off, and includes the common law right (and makes a duty of it) of banker's lien. The act condemns, not every transfer, but only such as it expressly prohibits; which are only such as deplete or lessen the bankrupt's estate.

An exchange of values between an insolvent debtor and one of his creditors does not constitute a preference, because in such cases there is no diminution of the debtor's estate whereby creditors may be injured. *Cook* v. *Tullis*, 18 Wall. 332; *Clark* v. *Iselin*, 21 Wall. 378; *Fox* v. *Gardner*, 21 Wall. 480; *Sawyer* v. *Turpin*, 91 U. S. 120, 121; *Stevens* v. *Blanchard*, 3 Cush. 169.

Paying cash for property purchased; making a loan; depositing in bank; these are but exchanges of value. *Jaquith* v. *Alden*, 189 U. S. 82; *Pirie* v. *Chicago Trust Company*, 182 U. S. 438.

Recent decisions upon section 68 of the law hold that deposits are a proper set-off and within the contemplation of the act. *In re Myers*, 99 Fed. Rep. 691; *In Matter of Kalber.*

2 Nat. Bankruptcy News, 264; *Hough* v. *First Nat. Bank*, 4 Biss. 349; *Blair* v. *Allen*, 3 Dillon, 109; *Ex parte Howard Nat. Bank*, 2 Lowell, 487; *In re Petrie*, 5 Benedict, 110; *Ex parte Whiting*, 2. Lowell, 472; *Kelly* v. *Philan*, 5 Dillon, 228; *In re Farnsworth*, 5 Bissell, 223; *Robinson* v. *Wisconsin Bank*, 18 Bankruptcy Rep. 243; *In re Elsasser*, 7. Am. B. Rep. 215.

The bank had a banker's lien upon the balance of the general deposit account of all indebtedness then due to it. *Smith* v. *8th Ward Bank*, 31 App. Div. N. Y. 6; *In re Emslie*, 102 Fed. Rep. 291; *National Bank* v. *Insurance Co.*, 104 U. S. 71; *Bank of Metropolis* v. *N. E. Bank*, 1 How. 289; *Straus* v. *Tradesmen Nat. Bank*, 122 N. Y. 379, and cases cited; *People* v. *St. Nicholas Bank*, 44 App. Div. N. Y. 313; *Meyers* v. *N. Y. County Nat. Bank*, 36 App. Div. N. Y. 482.

The rule is that, in general, the assignee does not stand in a better predicament than the bankrupt himself and can claim only what the latter might claim. *In re Emslie*, 102 Fed. Rep. 291; *Winsor* v. *Kendall*, 3 Story, 507; *Fisher* v. *Hunt*, 2 Story, 582; *Foster* v. *Hackley*, 2 B. R. 406; *In re Leland*, 10 Blatch. 503; *In re Lyon*, 7 B. R. 182.

The bankruptcy act entirely recognizes liens, whether state or common law, so long as they were not liens given in violation of the specific terms of the act. *In re Fall City Shirt Co.*, 3 Am. Bankruptcy Rep. 437; *In re Byrne*, 3 Am. Bankruptcy Rep. 268; *In re Beck*, 2 Nat. Bankruptcy News Rep. 533; *In re Lowenstein*, 2 Nat. Bankruptcy News Rep. 71; *In re Brown*, 104 Fed. Rep. 762; *In re Gillette*, 104 Fed. Rep. 769.

A recent case, that of *In re Kellar*, 110 Fed. Rep. 348, distinguished.

The appeal is rightly taken. *Matthews* v. *Hardt*, 79 App. Div. N. Y. 570; *Pirie Scott Case*, 182 U. S. 436; *Hutchinson* v. *Otis*, 190 U. S. 552; *Trust Co.* v. *Bent*, 187 U. S. 237.

*Mr. Louis Sturcke*, with whom *Mr. Albert P. Massey* was on the brief, for appellee:

The making of these deposits by the bankrupts at a time

when they were insolvent and their appropriation by the bank in part satisfaction of the debt owed it by the bankrupts have given the bank a preference. Ignorance of the insolvency is immaterial. *Pirie* v. *Chicago Title & Trust Co.*, 180 U. S. 438.

The bank having received a preference, the doctrine of set-off cannot be invoked to undo and to make good what the statute has declared is a "preference." *Sawyer* v. *Hoag*, 17 Wall. 610, 622; *Traders' Bank* v. *Campbell*, 14 Wall. 87, 97; *Pearsall* v. *Nassau Nat. Bank*, 74 App. Div. N. Y. 89.

Cases on appellant's brief as to set-off distinguished, and see *In re Hays, Foster & Ward Co.*, 3 N. B. N. & R. 301. See *In re Kellar*, 110 Fed. Rep. 348; *Matter of Tacoma Shoe & Leather Co.*, 3 N. B. N. & R. 9; *Matter of Erik A. Christensen*, 3 N. B. N. & R. 231.

To say that the bank has a banker's lien does not save the transaction from being a preference under the Bankruptcy Act.

The lien of the bank does not come into existence until the debt to the bank becomes due. The very cases cited by the appellant bring out this point clearly.

There is nothing in the record showing any special agreement giving the bank a lien upon the deposits at the time when made, as was the case in *Hatch* v. *Fourth National Bank*, 147 N. Y. 184.

Even if there was a special agreement made at the time the notes were discounted by the bank, it is amply settled by the authorities decided under the present bankruptcy law that the lien would not attach until actual possession took place. *Wilson Brothers* v. *Nelson*, 183 U. S. 191; *Matthews* v. *Hardt*, 79 App. Div. N. Y. 570; *Matter of Fannie Mandel*, N. Y. Law Journal, Nov. 24, 1903

Mr. Justice Day delivered the opinion of the court.

This is an appeal from the judgment of the Circuit Court of Appeals for the Second Circuit, reversing the order of the

District Court affirming the order of the referee in bankruptcy, allowing a claim against the estate of Stege & Brother. This claim was allowed against the contention of the trustee of the bankrupt, that it could not be proved until the bank should surrender a certain alleged preference given to it in contravention of the bankrupt act. The Circuit Court of Appeals reversed the order of the District Court, holding that the bank must first surrender the preference before it could be allowed to prove its claim. 116 Fed. Rep. 342. The Circuit Court of Appeals made the following findings of fact:

" For a number of years past the bankrupts, George H. Stege and Frederick H. Stege, were engaged, in the city and county of New York, in the business of dealing in butter, eggs, &c., at wholesale, under the firm name and style of Stege & Brother. On January 27, 1900, they filed a voluntary petition of bankruptcy in the District Court, with liabilities of $67,232.49 and assets of $20,729.66, and upon the same day were duly adjudicated bankrupts. Among their liabilities there was an indebtedness of $40,000 to the New York County National Bank for money loaned upon four promissory notes for $10,000 each. The money was loaned to the bankrupts and the notes were originally given as follows:

"April 26, 1899, $10,000, 6 months, due October 26, 1899.

"April 26, 1899, $10,000, 7 months, due November 26, 1899.

"June 26, 1899, $10,000, 4 months, due October 26, 1899.

"August 2, 1899, $10,000, 4 months, due December 2, 1899.

"None of these notes were paid when they fell due, but were all renewed as follows:

"October 26, 1899, $10,000, 3 months, due January 26, 1900.

"November 26, 1899, $10,000, 75 days, due February 9, 1900.

"October 26, 1899, $10,000, 3 months, due January 26, 1900.

"December 2, 1899, $10,000, 69 days, due February 9, 1900.

"On January 23, 1900, in the morning, the bankrupts went to the New York County National Bank and asked the officers to have the two notes of $10,000 each, which fell due on January 26, extended. The bankrupts at that time informed the

bank officers that they were unable to pay the notes then about to fall due. In the afternoon of the same day, January 23, 1900, the bankrupts again called upon the bank officers, and at that time they delivered to them a statement of their assets and liabilities, which statement was not delivered until after the deposit of $3,884.47 had been made on that day. This statement as of January 22, 1900, showed their assets to be $19,095.67 and their liabilities $65,864.61.

"The bankrupts kept their bank account in the New York County National Bank since May 6, 1899. On January 22, 1900, their balance in the bank was $218.50. On the same day they deposited in that account $536.83; on January 23, 1900, $3,884.47; on January 25, 1900, $1,803.95, making a total of $6,225.25 deposited in the three days mentioned. Of this amount there was left in the bank account on the day of the adjudication in bankruptcy, January 27, 1900, the sum of $6,209.25, the bank having honored a check of Stege Brothers after the date of all these deposits.

"At the first meeting of creditors, February 9, 1900, the New York County National Bank filed its claim for $33,790.25.

"In its proof of claim the bank credited upon one of the notes which became due on January 26, 1900, the deposit of $6,209.25. The claim was allowed by the referee in the sum of $33,750.25, being $40,000 less the amount on deposit in bank ($6,209.25), and a small rebate of interest on the unmatured notes. Some of the creditors at this meeting reserved the right to move to reconsider the claim of the New York County National Bank; the referee granted this request. Afterwards the trustee, as the representative of the creditors, moved before the referee to disallow and to expunge from his list of claims the claim of the New York County National Bank unless it surrendered the amount of the deposit, namely, $6,209.25, which had been credited by the bank upon one of the notes. The referee denied that motion, and an appropriate order was made and entered. The trustee thereupon duly filed his petition to have the question certified to the District Judge. The District Judge on

the 25th day of November, 1901, made an order affirming the order of the referee. From that order an appeal was duly taken by the trustee to the Circuit Court of Appeals. The deposits were made in the usual course of business; at the time they were made Stege Brothers were insolvent."

As a conclusion of law, the Court of Appeals held that the deposit would amount to a transfer enabling the bank to obtain a greater percentage of the debt due to it than other creditors of the same class, and that allowance of the claim should be refused unless the preference was surrendered. This case requires an examination of certain provisions of the bankrupt law. Section 68 of that law provides:

"SEC. 68. Set-offs and counterclaims:

"(a.) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"(b.) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate, or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy."

Section 60 provides (prior to the amendment of February 5, 1903):

"SEC. 60. Preferred creditors: a. A person shall be deemed to have given a preference if being insolvent he has . . . made a transfer of any of his property; and the effect of the . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other such creditors of the same class."

Section 57g provides (prior to amendment of February 5, 1903): "The claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender the preferences."

Considering, for the moment, section 68, apart from the other sections, subdivision *a* contemplates a set-off of mutual debts or credits between the estate of the bankrupt and the creditor, with an account to be stated and the balance only to be allowed and paid. Subdivision *b* makes certain specific exceptions to this allowance of set-off, and provides that it shall not be allowed in favor of the debtor of the bankrupt upon an unproved claim or one transferred to the debtor after the filing of the petition in bankruptcy, or within four months before the filing thereof, with a view to its use for the purpose of set-off, with knowledge or notice that the bankrupt was insolvent or had committed an act of bankruptcy. Obviously, the present case does not come within the exceptions to the general rule made by subdivision *b*. It cannot be doubted that, except under special circumstances, or where there is a statute to the contrary, a deposit of money upon general account with a bank creates the relation of debtor and creditor. The money deposited becomes a part of the general fund of the bank, to be dealt with by it as other moneys, to be lent to customers, and parted with at the will of the bank, and the right of the depositor is to have this debt repaid in whole or in part by honoring checks drawn against the deposits. It creates an ordinary debt, not a privilege or right of a fiduciary character. *Bank of the Republic* v. *Millard*, 10 Wall. 152. Or, as defined by Mr Justice White, in the case of *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 288: "The deposit of money by a customer with his banker is one of loan, with the superadded obligation that the money is to be paid, when demanded, by a check." *Scammon* v. *Kimball*, 92 U. S. 362. It is true that the findings of fact in this case establish that at the time these deposits were made the assets of the depositors were considerably less than their liabilities, and that they were insolvent, but there is nothing in the findings to show that the deposit created other than the ordinary relation between the bank and its depositor. The check of the depositor was honored after this deposit was made, and for aught that appears Stege Brothers

might have required the amount of the entire account without objection from the bank, notwithstanding their financial condition.

We are to interpret statutes, not to make them. Unless other sections of the law are controlling, or in order to give a harmonious construction to the whole act, a different interpretation is required, it would seem clear that the parties stood in the relation defined in section 68a, with the right to set off mutual debts, the creditor being allowed to prove but the balance of the debt.

Section 68a of the bankruptcy act of 1898 is almost a literal reproduction of section 20 of the act of 1867. So far as we have been able to discover the holdings were uniform under that act that set-off should be allowed as between a bank and a depositor becoming bankrupt. *In re Petrie*, 7 N. B. R. 332; *S. C.*, Fed. Cas. No. 11,040; *Blair* v. *Allen*, 3 Dill. 101; *S. C.*, Fed. Cas. No. 1483; *Scammon* v. *Kimball*, 92 U. S. 362. In *Traders' Bank* v. *Campbell*, 14 Wall. 87, the right of set-off was not relied upon, but a deposit was seized on a judgment which was a preference.

But it is urged that under section 60a this transaction amounts to giving a preference to the bank, by enabling it to receive a greater percentage of its debts than other creditors of the same class. A transfer is defined in section 1 (25) of the act to include the sale and every other and different method of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security. While these sections are not to be narrowly construed so as to defeat their purpose, no more can they be enlarged by judicial construction to include transactions not within the scope and purpose of the act. This section 1 (25), read with sections 60a and 57g, requires the surrender of preferences having the effect of transfers of property "as payment, pledge, mortgage, gift or security which operate to diminish the estate of the bankrupt and prefer one creditor over another."

The law requires the surrender of such preferences given to the creditor within the time limited in the act before he can prove his claim. These transfers of property, amounting to preferences, contemplate the parting with the bankrupt's property for the benefit of the creditor and the consequent diminution of the bankrupt's estate. It is such transactions, operating to defeat the purposes of the act, which under its terms are preferences.

As we have seen, a deposit of money to one's credit in a bank does not operate to diminish the estate of the depositor, for when he parts with the money he creates at the same time, on the part of the bank, an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it. It is not a transfer of property as a payment, pledge, mortgage, gift or security. It is true that it creates a debt, which, if the creditor may set it off under section 68, amounts to permitting a creditor of that class to obtain more from the bankrupt's estate than creditors who are not in the same situation, and do not hold any debts of the bankrupt subject to set-off. But this does not, in our opinion, operate to enlarge the scope of the statute defining preferences so as to prevent set-off in cases coming within the terms of section 68*a.* If this argument were to prevail, it would in cases of insolvency defeat the right of set-off recognized and enforced in the law, as every creditor of the bankrupt holding a claim against the estate subject to reduction to the full amount of a debt due the bankrupt receives a preference in the fact that to the extent of the set-off he is paid in full.

It is insisted that this court in the case of *Pirie* v. *Chicago Title & Trust Co.*, 182 U. S. 438, held a payment of money to be a transfer of property within the terms of the bankrupt act, and when made by an insolvent within four months of the filing of the petition in bankruptcy, to amount to a preference, and that case is claimed to be decisive of this. In the *Pirie* case the turning question was whether the payment of money was a transfer within the meaning of the law, and it was held

that it was.  There the payment of the money within the time
named in the bankrupt law was a parting with so much of
the bankrupt's estate, for which he received no obligation of
the debtor but a credit for the amount on his debt.  This was
held to be a transfer of property within the meaning of the
law.  It is not necessary to depart from the ruling made in
that case, that such payment was within the operation of the
law, while a deposit of money upon an open account subject
to check, not amounting to a payment but creating an obliga-
tion upon the part of the bank to repay upon the order of the
depositor, would not be.  Of the case of *Pirie* v. *Chicago Title
& Trust Co.*, it was said in *Jaquith* v. *Alden*, 189 U. S. 78, 82:
"The judgment below was affirmed by this court, and it was
held that a payment of money was a transfer of property, and
when made on an antecedent debt by an insolvent was a prefer-
ence within section 60*a*, although the creditor was ignorant
of the insolvency and had no reasonable cause to believe that
a preference was intended.  The estate of the insolvent, as it
existed at the date of the insolvency, was diminished by the
payment, and the creditor who received it was enabled to
obtain a greater percentage of his debt than any other of the
creditors of the same class."

In other words, the *Pirie* case, under the facts stated, shows
a transfer of property to be applied upon the debt, made at
the time of insolvency of the debtor, creating a preference
under the terms of the bankrupt law.  That case turned upon
entirely different facts, and is not decisive of the one now
before us.  It is true, as we have seen, that in a sense the bank
is permitted to obtain a greater percentage of its claim against
the bankrupt than other creditors of the same class, but this
indirect result is not brought about by the transfer of property
within the meaning of the law.  There is nothing in the find-
ings to show fraud or collusion between the bankrupt and the
bank with a view to create a preferential transfer of the bank-
rupt's property to the bank, and in the absence of such show-
ing we cannot regard the deposit as having other effect than

to create a debt to the bankrupt and not a diminution of his estate.

In our opinion the referee and the District Court were right in holding that the amount of the deposit could be set off against the claim of the bank, allowing it to prove for the balance, and the Circuit Court of Appeals, in holding that this deposit amounted to a preference to be surrendered before proving the debt, committed error.

*Judgment of the Circuit Court of Appeals reversed, and that of the District Court affirmed; cause remanded to latter court.*

MR. JUSTICE MCKENNA dissents.