### In re PERCY FORD CO.

(District Court, D. Massachusetts. December 27, 1911.)

No. 16,926.

1. BANKRUPTCY (§ 316*)—CLAIM—MATURITY.

Where a bank at the time of a bankrupt's assignment for benefit of creditors and subsequent bankruptcy held four notes against the bankrupt none of which were due at the time of the assignment, the bank's claim on each note was a debt provable in bankruptcy proceedings. whether they were due or not when the petition was filed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 474–476; Dec. Dig. § 316.*]

2. BANKRUPTCY (§ 164*)—SET-OFF—BANK DEPOSIT—INDEBTEDNESS.

The bankrupt, having a deposit account with the claimant bank, and indebted to it on certain notes not yet due, applied to its creditors for an extension January 26, 1911. On January 30th, in consequence of the request for extension, it made an arrangement with the bank, providing for the issuance of cashier's checks to the bankrupt's treasurer. On February 6th it assigned for the benefit of creditors, and was petitioned into bankruptcy February 16th, on which date $1,977.82 stood to its credit on the bank's books in the cashier's check account, there balancing certain cashier's checks which had been issued to the bankrupt's treasurer, but left by him in the bank's custody and control. This sum was part of a total amount transferred from the bankrupt's deposit account to the cashier's check account since January 30th, and made up of deposits made by the bankrupt, some of them before and some of them after January 30th. The bank had paid as usual, since January 30th, checks drawn by the bankrupt on its deposit account. *Held*, that such facts did not require a conclusion that the $1,977.82, though not originally received by way of preference, had since been so treated by the bank as to create a preference in its favor, and thus preclude the bank from offsetting it against the bankrupt's debt on the notes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Percy Ford Company. On petition to review a referee's order allowing a claim of National Shawmut Bank. Order approved and affirmed.

Gastin, Snow & Saltonstall, for creditor.

Harvey H. Pratt and Samuel O. Reinstein, for trustees.

DODGE, District Judge. This matter has been submitted here upon the same agreed statement of facts which was before the

referee, and without oral argument; briefs being filed by the respective parties instead.

That the referee exceeded his powers when he extended the time for filing the petition for review beyond the time limited by rule 15 of the bankruptcy rules of this court does not seem to be now contended.

[1] Nor is there now any dispute that the bank has a provable claim against the bankrupt estate. It is for $7,500 and interest due the bank as holder of four promissory notes whereon the bankrupt company is liable. The bankrupt made an assignment for the benefit of its creditors February 6, 1911. This was charged as an act of bankruptcy in a creditors' petition filed against it on February 16, 1911, and upon this petition it was adjudged bankrupt March 6, 1911. The four notes fell due February 10, February 26, March 21, and April 19, 1911, respectively. None were due when the assignment was made. One had become due when the petition was filed. Two had become due at the time of the adjudication. The bank's claim under each note is a debt provable in these proceedings, whether the note was due or not when the petition was filed. Germania, etc., Co. v. Loeb, 188 Fed. 287, 289, 110 C. C. A. 263.

$1,977.82 stood credited on the books of the bank to the bankrupt company or its treasurer when the bankruptcy petition was filed. This amount, with interest, the bank seeks to set off against its claim as holder of the notes. The referee, holding that it has the right to do so, has allowed its claim in the amount of $5,563.-15, the total claim less the set-off. The trustees in bankruptcy contend that the bank's retention of $1,977.82 amounts to a preference, which it must surrender before it can prove any claim.

[2] The bankrupt had had a deposit account with the bank for some time before it assigned for the benefit of its creditors on February 6. Had the $1,977.82 been simply the balance of this account to the bankrupt's credit, and had nothing further appeared, the bank's right to set it off, instead of surrendering it, would have been clear. New York, etc., Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380; Lowell v. International, etc., Co., 158 Fed. 781, 783, 86 C. C. A. 137. If, as appears by the agreed statement of facts, the bankrupt asked its creditors on January 26, 1911, for an extension of time, and on January 30th the arrangement regarding cashier's checks was made between the bank and Hooper in consequence of the extension asked, the bank must be held chargeable on and after January 30th with knowledge of the bankrupt's insolvency as later established in these proceedings. Part of the money represented by the cashier's checks had been deposited by the bankrupt in its deposit account after January 30th, and had thus been received by the bank after it had become chargeable with this knowledge. But the bank had also honored checks drawn by the bankrupt after January 30th, and there is nothing in the agreed facts to show that any of the money came into the bank's hands from the bankrupt as a credit on its debt to the bank,

or without creating an obligation on the part of the bank to repay what it received upon the bankrupt's order. Thus far the facts are similar to those in New York, etc., Bank v. Massey, above cited, and do not, any more than in that case, show that the bank has received a preference.

But the $1,977.82 here in question, though made up of amounts at one time credited to the bankrupt in the deposit account, had afterward been transferred from that account and credited to the bankrupt in the "cashier's check account." In that account it balanced the amount of sundry cashier's checks issued by the bank on various dates between January 30 and February 4, 1911, both inclusive, to Hooper, the bankrupt's treasurer, less a part of the cashier's checks so issued, which Hooper had from time to time used to meet liabilities of the bankrupt on occasions when the balance to its credit in its deposit account was insufficient for the purpose. The cashier's checks referred to, though issued to Hooper, had not left the bank's custody and control. By agreement between Hooper and the bank, they were retained in the custody of a bank official, and Hooper's use of some of them, from time to time as stated, was in each case with the bank's approval. Do these facts require the conclusion that the money thus in the bank's hands, though not originally received by way of preference, has since been so treated by the bank as to create a preference in its favor?

The arrangement between the bank and Hooper according to which cashier's checks were issued and used as Hooper directed did not, so far as appears, put the bank in any better position with regard to the bankrupt's liability to it on the notes than that which it occupied before the arrangement was made, or while the money represented by the checks remained to the bankrupt's credit in the deposit account. Though the checks were drawn to Hooper's order and his directions regarding them were followed by the bank, it was understood between the bank and Hooper that he was representing the bankrupt in all that he did. No one else is shown to have any interest in them or claim upon them or in the funds they represented, and so long as they remained in the bank's custody, no one else could acquire any such interest or claim. The obligation of the bank continued to be an obligation to repay the money upon the bankrupt's order, notwithstanding the fact that its order was to be given by Hooper. I find nothing in the agreed facts to show an intent on the bank's part to accumulate funds of the bankrupt in its possession, in whatever form, for its own ultimate security as holder of the notes, or to show any restriction imposed by it upon the bankrupt's withdrawal of such funds, or to show any appropriation of such funds by the bank, as the bankrupt's property, toward payment of the notes. Any act on the bank's part amounting to such appropriation would be inconsistent with reliance on its relations to the bankrupt as its customer, and with reliance upon its right of set-off, as in Traders', etc., Bank v. Campbell, 14 Wall. 87, 20 L. Ed. 832, on which the trustees rely.

See, also, Lowell v. International, etc., Co., 158 Fed. 781, 783, 86 C. C. A. 137. But no such act has here been shown. The refusal of the check drawn by Hooper on February 6, 1911, in favor of the persons to whom the bankrupt on that day assigned, is to be regarded, if the foregoing conclusions are right, as amounting to no more than an assertion by the bank of its right of set-off, after an act of bankruptcy whereby the debtor confessed itself insolvent. It is not to be regarded as an act inconsistent with that right. Germania, etc., Bank v. Loeb, 188 Fed. 285, 291, 292, 110 C. C. A. 263.

Whether or not Hooper so used any of the funds represented by the cashier's checks as to prefer any creditor other than the bank does not appear from the facts agreed, and is immaterial; the bank not appearing to have participated in any such preference.

The referee's order is therefore approved and affirmed.