## COMBER et al. v. FRANKFORD TRUST CO.
### No. 16880.

District Court, E. D. Pennsylvania.

July 6, 1933.

Bertram K. Wolfe, of Philadelphia, Pa., for plaintiffs.

Henry Panfil and Moore, Gossling & Panfil, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This was a suit at law by the trustee in bankruptcy of one Morris Baseman, to recover from the defendant bank the sum of $2,400, as a preference, which sum the bank had applied to the payment of one of Baseman's notes, within four months of the filing of the petition.

The jury answered certain specific interrogatories and found a general verdict in favor of the plaintiff. The facts established by the verdict are as follows:

In April, 1931, Baseman was engaged in the retail coal business and was insolvent. His liabilities, which were in the neighborhood of $80,000, included a note for $2,400 held by the defendant bank. In an effort to save his trade and continue in business, he organized a corporation, Baseman Coal & Coke Company, and transfered to it, for a fair consideration, his physical assets consisting of stock and equipment. His accounts receivable, amounting to some $10,000, were not transferred to the corporation.

Thereafter the corporation conducted the coal business and Baseman continued to collect the accounts receivable and to deposit the money from them to his own account in the bank. The corporation also had an account at the bank which was of course the active account for the business. On four different occasions Baseman transferred $500, a total of $2,000, from his individual account and deposited it in the corporation account. In addition he deposited at least $400 more in the corporate account which he got directly from the collection of his accounts receivable.

Baseman's note had been renewed or extended from time to time, and the last extension came due on August 6, 1931.

On that day an attorney representing Baseman's creditors called upon the bank, informed one of its officers that Baseman was hopelessly insolvent and that a petition in bankruptcy was about to be filed against him. The corporation then had on deposit with

the bank more than the amount of the note, and at the close of banking hours, the note being unpaid, the bank applied the corporation's balance to its payment in the amount of $2,400.

The bank knew that Baseman had incorporated his business prior to June 12, 1931, on which date the corporation opened its account with it. The president was also told "that the old business is going to be liquidated, that we cannot continue." The bank had further been advised that the old business (individual) and the corporation "were one and the same thing, the assets and liabilities of the old firm were being taken over by the corporation."

The bank, on August 26, when it applied the corporation's account to the payment of Baseman's note, had reasonable cause to believe that Baseman was insolvent. It also, prior to the time that the various deposits amounting in all to more than $2,400 and derived from the collection of his own accounts receivable were made by Baseman in the account of the corporation, had reasonable cause to believe that he was insolvent.

The defendant argues that the finding of the jury upon the latter point is not supported by any testimony, but, while the question is a close one, I think the testimony is sufficient. A statement to a bank by a debtor that he cannot continue in business and is going to liquidate, coupled with the simultaneous creation of a corporation which takes over the active conduct of the business, taken in connection with all the circumstances of this case, are sufficient to put any intelligent person on notice as to the position of the debtor.

The decision of this case turns upon whether or not the rule of New York County Nat. Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380, applies. That decision holds that a deposit of money to one's credit in a bank does not diminish the estate of the depositor, for when he parts with the money he creates at the time on the part of the bank an obligation to pay the amount of the deposit against checks as drawn, and, in the absence of fraud or collusion, upon the bankruptcy of the depositor, the bank need not surrender such balance but may set it off against notes of the bankrupt held by it. I think that the rule of New York County Nat. Bank v. Massey does not apply to this case for two reasons.

In the first place, the vital thing upon which that decision depends is missing here. The deposit of Baseman's money in the corporation account did not create an obligation on the part of the bank to pay the amount of the deposit upon Baseman's checks. This is true although it is agreed that the money was really Baseman's money and remained so at all times and although the bank was advised that he and the corporation were "one and the same thing." The bank, in spite of these facts, could have refused to pay Baseman's checks from the corporation's account and would not have been liable to him had they done so. In other words, when Baseman took money from his individual account and put it in the corporation's account, he was diminishing his estate available to creditors, because no corresponding obligation to pay his checks as drawn was created. In fact, I have little doubt that his main purpose was to diminish his estate available to creditors.

But, secondly, even if the creation of a separate corporate entity be wholly disregarded and the transaction viewed as though there never had been any corporation, it seems almost self-evident that Baseman with the consent and knowledge of the corporation was "building up" the account so that it would be available at the proper time to meet the note. Cases where this is done form a well-recognized exception to the rule of New York County Nat. Bank v. Massey, supra. See Matters v. Manufacturers' Trust Company (C. C. A.) 54 F.(2d) 1010, 1013. In such a case Judge Hand points out: "It was enough that the depositor alone intended not to use his right of withdrawal until the bank's right ended it. The deposit becomes a transfer because the depositor means it to be such; that is, he means not to exercise his right of withdrawal as to all of it, but to leave some part until that right is gone. It is not necessary that the residue shall be determinable in advance; no more need appear than that some part shall be left. When this is so the deposit is not in ordinary course; the part unused becomes a preferential payment when seized by set-off."

The case here is of that nature. Whenever the bankrupt's individual account got above $500 he would draw $500 out and put it in the corporation's account, where he probably thought his general creditors could not reach it, or at least might have difficulty in doing so, but where, by reason of his special arrangement and understanding with the bank that he and the corporation were one and the same thing, the bank could appropriate it to the payment of its claim against him. Naturally he wished to favor the bank and keep in its good graces, since he was endeavoring to go on with his business under the

form of a corporation and required credit and banking connections for that purpose. The bank seems to have had no hesitation in appropriating the corporation's funds to pay the individual note, and apparently the corporation acquiesced and every one understood that it could be done in that way.

The motion for a new trial is denied.