## HALL v. ROCHESTER TRUST CO.
### No. 853.

District Court, D. New Hampshire.

Feb. 11, 1935.

Conrad Snow, of Rochester, N. H., for the Bank.

Burt R. Cooper, of Rochester, N. H., for the trustee.

MORRIS, District Judge.

This is an action brought by Gardner S. Hall, trustee in bankruptcy of George B. Leavitt Company, against the Rochester Trust Company, to recover an alleged preference.

The parties waived in writing a jury trial and the case was heard by the court December 21, 1934.

Counsel filed a written agreement as to certain facts. From such agreement and the oral testimony, I find the following:

George B. Leavitt Company is a corporation organized in 1926, under the laws of the state of New Hampshire, with its principal place of business at Farmington, in said state, where it owned a factory and the usual equipment incident to the manufacture of shoes.

The Rochester Trust Company is a state banking institution organized under the laws of New Hampshire with its principal place of business at Rochester, in said state.

Prior to December 6, 1933, the bank conducted a commercial department in addition to its savings department.

The main banking business of the shoe company was conducted through the defendant bank. It carried a small account in a Farmington bank. On July 17, 1932, Frederick P. Liberty, treasurer and general manager of the shoe company, died suddenly. He was the owner of approximately two-thirds of the capital stock, his widow held ten shares, and Normand P. Liberty, a son, owned the balance.

During the period covered by the transaction involved in this action, Bernard Q. Bond and Ernest H. Trickey were respectively chairman of the board and treasurer of the defendant bank. Mr. Trickey died April, 1933, and Mr. Bond died December 2, 1934.

Following the death of Frederick P. Liberty, Normand P. Liberty assumed the active management of the shoe company and succeeded his father as treasurer.

On November 11, 1932, the company made a common-law assignment for the benefit of creditors to Guy Smart of said Rochester. Creditors' meetings were held and a creditors' committee chosen. The creditors' committee complained to the bank of the application of certain funds to a note owed to the bank by the shoe company in the amount of $3,718.52, claiming that it was a preferential payment. This was denied by the bank.

On March 3, 1933, a petition in bankruptcy was filed by some of the trade creditors and the shoe company was on the same day adjudicated a bankrupt. Gardner S. Hall of Rochester was appointed trustee and duly qualified. Schedules were subsequently filed showing assets of $10,638.63, of which $957.-89 was cash. Liabilities were disclosed to the amount of $50,840.03.

The assignee, under the common-law assignment, had previously collected $8,582.82, and had paid claims of wages due, taxes, and other preferred claims to the amount of $7,-621.50.

The shoe company was a depositor with the bank, beginning some time prior to 1929 and continuing until November 11, 1932. It borrowed money from time to time which was credited to its account and was repaid by charging the account with the amount of the note when due. A schedule of these borrowings covering the period from January 2, 1931, to December 24, 1931, has been furnished the court. Forty notes varying in amounts from $2,000 up to $5,000 appear to have been given during the period, most of them on short time, thirty days or less, and from the evidence in the case I find that in the main they were given to take care of the company's pay roll.

On August 7, 1931, the company borrowed of the defendant $10,000, payable in thirty days. This note appears to be of somewhat different character from the forty notes above mentioned, as instead of being paid by being charged to the account of the company, it was renewed every thirty days thereafter until July 6, 1932, when the note in question in this suit was given due August 5, 1932, and paid by charges against the account of the company as hereinafter stated.

As showing the general course of transactions between the company and the bank subsequent to August 7, 1931, it appears that August 20, 1931, the company borrowed from the bank $2,500, payable in thirty days. A new note for the amount was given every thirty days after its due date until April 18, 1932, when it was renewed for three weeks falling due on May 9, 1932, and on May 12, 1932, the amount due on the note was charged to the account of the company.

On May 14, 1932, the company borrowed of the defendant $1,200 for two days, paying the same May 16, 1932.

On June 3, 1932, it borrowed $2,500 for fifteen days and on June 25, 1932, the amount of the note was charged to the account of the company.

On June 21, 1932, it borrowed $2,100 for three days, and on June 25, 1932, this sum was also charged to the account of the company.

On June 24, it borrowed $2,500, on thirty days' time coming due July 24, and was paid as hereinafter stated.

On July 7, 1932, it borrowed $2,500 for six days which was paid as hereinafter stated. On July 8, 1932, it borrowed $7,500, which was paid as hereinafter stated. On July 8, 1932, the total principal on notes owed the bank was $22,500. As already stated, Frederick P. Liberty, treasurer and principal owner of the bankrupt company died July 17, 1932, and Normand Liberty became treasurer and the active manager.

The company had policies of life insurance upon the life of Frederick P. Liberty payable to the company on which it realized approximately $36,427.45, and on August 4, 1932, it was deposited in the defendant bank to the company's account. The balance of the company's account on the previous day was $201.78.

On August 4, 1932, the account of the company was charged, with the consent of Martin Liberty, with $12,597.51, in payment of the following items:

| | | |
|---|---|---|
| Note: | $2,500 dated July 7........ | $2,500.00 |
| | Interest 22 days........... | 9.17 |
| Note: | $2,500 dated June 24....... | 2,500.00 |
| | Interest 11 days.......... | 4.59 |
| Note: | $7,500 dated July 8........ | 7,500.00 |
| Note: | $10,000 dated July 6, interest | |
| | on $5,000 to Sept. 19....... | 37.50 |
| | on $5,000 to Oct. 4........ | 50.00 |
| | | $12,601.26 |
| | Less interest rebate on $7,500 note.. | 3.75 |
| | | $12,597.51 |

After the above payment, the balance of principal owing to the defendant was $10,-000. Between August 4, 1932, when the above-listed notes were paid and October 14, 1932, the company borrowed on short term notes, apparently for taking care of pay

rolls, the following amounts, which, as they fell due, were charged against the company's account and so paid:

| Date 1932 | Amount | Time | When Paid 1932 |
|---|---|---|---|
| Aug. 26, | $2,500.00 | 1 week | Sept. 2, |
| Sept. 16, | $2,000.00 | 5 days | Sept. 22, |
| Sept. 23, | $2,000.00 | 5 days | Sept. 29, |
| Sept. 30, | $2,500.00 | 5 days | Oct. 5, |
| Oct. 7, | $1,200.00 | 4 days | Oct. 11, |
| Oct. 14, | $1,000.00 | 5 days | Oct. 21, |

Interest on $10,000 was paid from time to time until October 21, 1932, when the bank applied $2,300 toward the payment of the principal. On that date the company had on deposit in its account $4,979, and, after outstanding checks that came in for payment were honored, it had a balance of $458.56. On October 22, 1932, the company deposited $1,823; October 25, $170; October 28, $4,920; and on the same date the bank charged the company's account with $4,000, which it applied on the $10,000, leaving the company's balance on that date $500.61. On November 1, 1932, the company deposited $450; November 2, $734; November 3, $900; and November 4, $4,537. On the last-mentioned date the bank charged the company account with $3,718, it being the balance of the $10,000, leaving a company balance on that date of $1,526.67. Between that date and November 11, 1932, deposits were made by the company on November 8, $224.78; November 10, $1,893; and the bank balance on that date was $1,384.57.

As hereinbefore stated on November 11, 1932, the company made a common-law assignment for the benefit of creditors. Until the assignment, the bank honored all checks drawn by the company on its account even when such checks resulted in an over draft.

While it appears that the petition in bankruptcy was dated February 21, 1933, it was not filed in court until March 3, 1933, so that the only payment made upon the $10,000 note within the four-month period prior to the filing of the petition was the payment of November 4, 1932, of $3,718.52, this being the sum which the trustee seeks to recover.

The last financial statement shown the bank was a statement of September 2, 1932, showing assets to the amount of $68,671.24, and liabilities amounting to $39,199.94, or a net worth of $29,471.30. It had been customary for the company to clean up its bank indebtedness during each year and then obtain new loans. After the statement of September 2 was given the bank, the subject of further loans was discussed and Mr. Trick-

ey on the part of the bank said it would be necessary to have more adequate information and to take the matter up after the loans that had been made had been cleaned up. It does not appear that the company solicited any new loans except for short term notes for pay rolls after that date. It continued doing business with the bank in the regular and usual manner. It was not until after the last payment was made on the $10,000 note that Mr. Liberty, the treasurer of the company, realized that he did not have sufficient working capital and that he could not continue in business without obtaining further loans. Losses had been suffered by reason of bad debts. There had also been manufacturing losses owing to insufficient orders. He realized that his financial statements did not show assets over and above liabilities such that when presented to a bank for the purpose of securing a loan it would be productive of results. It does not appear that he made any actual request of the defendant bank for a loan or that he was ever actually refused. He testified that he did not appreciate the actual condition of the company or realize that it was insolvent until about the time of the common-law assignment and until he received the report of Cooley & Marvin, public accountants engaged to make an audit by a creditors' committee.

### Rulings of Law.

Section 68a of the Bankruptcy Act (11 USCA § 108 (a) provides as follows: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

A deposit of money upon general account with a bank creates the relation of debtor and creditor. The money deposited becomes a part of the general fund of the bank, to be dealt with by it as other moneys, to be lent to customers, and parted with at the will of the bank, and the right of the depositor is to have the debt repaid in whole or in part by honoring checks drawn against the deposit. It creates an ordinary debt, not a privilege or right of a fiduciary character. As was said by Mr. Justice White in the case of Davis v. Elmira Savings Bank, 161 U. S. 275, 288, 16 S. Ct. 502, 505, 40 L. Ed. 700: "The deposit of money by a customer with his banker is one of loan, with a superadded obligation that the money is to be paid when demanded by a check."

The $10,000 note owed the bank and the company's deposits on general account owed by the bank to the company constituted mutual debts between the bankrupt and the defendant which, under the provisions of section 68a, the bank had a right to set off one against the other within four months of the filing of the petition in bankruptcy without thereby securing a preference (Studley v. Boylston Bank, 229 U. S. 523, 33 S. Ct. 806, 57 L. Ed. 1313), unless the transaction is controlled by section 60a of the Bankruptcy Act (11 USCA § 96 (a) which provides as follows: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, * * * made a transfer of any of his property, and the effect of the * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Depositing money in a bank in a general account to his own credit by an insolvent within four months of his bankruptcy, subject to check, does not constitute a preference within the meaning of section 60a of the Bankruptcy Act. It does not diminish the estate of the depositor, for when he parts with the money he creates at the same time on the part of the bank an obligation to pay the amount of the deposit as soon as the depositor may see fit to draw a check against it. It is not a transfer of property as a payment, pledge, mortgage, gift, or security. New York County Bank v. Massey, 192 U. S. 138, 24 S. Ct. 199, 48 L. Ed. 380; Lowell v. Merchants' National Bank (D. C.) 283 F. 124; Cunningham v. Merchants' National Bank (C. C. A.) 4 F.(2d) 25, 41 A. L. R. 529.

It is true that if the deposits by the company had been made in the defendant bank for the purpose of creating a right of set-off or if there had been any collusion between the bankrupt and the bank to enable the bank to receive a greater percentage of its debts than any other unsecured creditor, then the transaction might be held to create a preference under section 60a. But such is not the fact in the instant case. I find there was nothing unusual or out of the ordinary in the transaction between the parties. They continued doing business in the usual and ordinary way right up to the time of the common-law assignment. The deposits were not made for the purpose of giving the bank a preference and the bank had no reasonable cause to believe that the Leavitt Company was insolvent to the extent that it would not continue to meet its obligations.

I hold that the bank was within its rights when it on November 4, 1932, charged the bankrupt's account with $3,718.52, and that the case is governed by section 68a of the Bankruptcy Act and not by section 60a as claimed by counsel for the trustee. See New York County Bank v. Massey, supra; In re Scherzer (D. C.) 130 F. 631; In re Myers (D. C.) 99 F. 691; Toof v. City National Bank of Paducah (C. C. A.) 206 F. 250.

A verdict may be entered for the defendant.