**In the Matter of Ed PERRY, Alleged Bankrupt.**

**No. BK/71-252.**

United States District Court,
D. South Carolina.
Jan. 12, 1972.

Carlisle Bean & Hines, Spartanburg, S. C., for Cooper Tire & Rubber Co., Mohawk Rubber Co. and Robertshaw Controls Co. H. Carlisle Bean, and Joseph E. Hines, Spartanburg, S. C., appeared.

Harvey W. Johnson and Arnold R. Merchant, Spartanburg, S. C., for Ed Perry.

Robert L. Wynn, III, Spartanburg, S. C., Temporary Receiver of Assets of Ed Perry doing business as Ed Perry Auto Parts.

## ORDER

HEMPHILL, District Judge.

On December 1, 1971, this matter, and the bankruptcy issues thereunder, was referred to Honorable J. Bratton Davis, Referee in Bankruptcy for the District of South Carolina. The Referee promptly scheduled and monitored hearings, a transcript of which has been furnished the court. On December 23, 1971, the Referee rendered his report, to which there have been no exceptions by the petitioning creditors, or others. The Report of the Referee is complete, self-explanatory, and passes upon all issues of fact and conclusions of law, citing and making reference to, where necessary, supporting authorities.

The recommendation of the Referee, that the court approve the findings and conclusions, and dismiss, for want of jurisdiction, the involuntary petition which conceived this controversy, dated November 3, 1971, is adopted, approved, and made the findings and conclusions of this court.

The petition is dismissed. The Report of the Referee is adopted in entirety and made the order of this court by reference.

Costs shall be taxed against the petitioning creditors.

And it is so ordered.

## REPORT OF REFEREE

TO: THE HONORABLE ROBERT W. HEMPHILL, UNITED STATES DISTRICT JUDGE

I, the undersigned, under your Order dated the first day of December, 1971, report that; on the second day of December, 1971, after due notice to all parties, a hearing was held before me, attended by the attorneys of record and the alleged bankrupt.

## STATEMENT

This proceeding in involuntary bankruptcy was referred to me "to take the testimony, give ear to statements of counsel and report thereafter my findings of facts and conclusions of law on the issue of the bankruptcy of the alleged bankrupt, with leave and authority to find and report such special matters as may be incidental or collateral thereto." [1]

On November 3, 1971, FULTON SYLPHON DIVISION, ROBERTSHAW CONTROLS COMPANY; MOHAWK RUBBER COMPANY; AND COOPER TIRE & RUBBER COMPANY (hereinafter referred to as the petitioning creditors), alleged creditors of Ed Perry (hereinafter referred to as "Perry") filed an involuntary petition in bankruptcy against Perry in the United States District Court for the District of South Carolina, asking that Perry be adjudicated a bankrupt on the grounds that Perry, within four months preceding the filing of the petition and while insolvent, did:

"1. Pay during October 1971, to the North Carolina National Bank of Tryon, North Carolina, the sum of $50,000.00 in reduction of his indebtedness to said creditor and with the intent to prefer it over his other creditors; and

2. suffered the involuntary appointment of a Receiver in the Court of Common Pleas for Spartanburg County to take charge of his property; and

3. admitted in writing through his attorney, his inability to pay his debts and inferentially admitted his willingness to be adjudged a bankrupt." [2]

The involuntary petition was personally served on Perry by a deputy United States Marshal on November 8, 1971, at 4:00 p. m.

On November 15, 1971, Perry served his answer to the petition specifically denying the alleged acts of bankruptcy, asking that adjudication in bankruptcy be stayed, and stating that it was his intention to file a petition for an arrange-

---

1. Order of Judge Hemphill, dated December 1, 1971.

2. Involuntary Petition in Bankruptcy filed November 3, 1971.

ment under Chapter XI of the Bankruptcy Act, "with debtor-in-possession, in this same proceeding." [3]

On October 26, 1971, eight days before they filed the involuntary petition in bankruptcy, the *same three creditors* had —with no notice to Perry—appeared, on *ex parte* petition, before the Court of Common Pleas for Spartanburg County, South Carolina, and received from that court an Order appointing a Receiver of Perry's property and fixing the Receiver's bond at $10,000. Whereupon, Perry, on the 17th day of November, 1971, filed a petition in that proceeding asking that the Receiver be discharged, and, if not, that the Receiver's bond be increased. At a hearing on Perry's petition, held on November 20, 1971, the Court of Common Pleas continued the Receivership, but required an increase in the bond to $100,000.

The petitioning creditors contend that Perry has committed the second, fifth and sixth acts of bankruptcy. He denied this.

Section 3a of the Bankruptcy Act (11 U.S.C. § 21a) defines the acts of bankruptcy:

"Acts of bankruptcy by a person shall consist of his having

(1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 67 or 70 of this Act; or

(2) made or suffered a preferential transfer, as defined in subdivision a of section 60 of this Act; or

(3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; or

(4) made a general assignment for the benefit of his creditors; or

(5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property; or

(6) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt."

The burden of proof is on the petitioning creditors in an involuntary petition to show by the preponderance of the evidence that the debtor is subject to adjudication. Walker Roofing & Heating Co. v. Merchant & Evans Co. (4th Cir. 1909) 173 F. 771. And they must prove the essential elements of the act of bankruptcy charged. Dreyer v. Greene (5th Cir. 1959) 267 F.2d 44.

Perry, at the outset of the hearing before me, produced his books, papers and accounts and submitted to examination and gave testimony on all matters demanded of him tending to establish solvency or insolvency or ability or inability to pay his debts as they matured. Thus, he was relieved of the burden of proving his solvency or his ability to pay his debts as they matured.[4]

As to the second act of bankruptcy (preferential transfer): The al-

---

3. This answer was filed in this court on November 16, 1971.

4. Section 3d of the Bankruptcy Act (11 U.S.C. § 21d) provides: "Whenever a person against whom a petition has been filed alleging the commission of the second, third, or fifth act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appear in court on the hearing, and prior thereto, if ordered by the court, with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him."

leged insolvency of Perry, as an element of the act, means insolvency at the time of the transfer, not as of the date of filing of the bankruptcy petition.[5]

Perry, who had been called as a witness by counsel for petitioning creditors, compiled with the help of his bookkeeper and his buyer and offered the following financial statement, which not only negates insolvency; it evidences solvency:

### LIABILITIES

| | |
|---|---|
| * Mortgage | $ 1,500.00 |
| Accounts payable | 738,301.41 |

### ASSETS

| | |
|---|---|
| Merchandise | $559,826.00 |
| Accounts receivable | 30,000.00 |
| Cash on hand | 153,000.00 |
| * Real Estate | 121,000.00 |
| Equipment | 61,700.00 |
| Interest in Chesnee Store | 13,000.00 |
| | $938,526.00 |
| NET WORTH | $198,724.59 |

* Testimony relative to the items in the written statement, or balance sheet, introduced shows that the mortgage was given in 1946 and that this is the only mortgage outstanding against the alleged bankrupt on all of the real estate, which the debtor testified was listed at cost price to him when purchased. (See footnote 6).

Neither the balance sheet nor the testimony of Perry and his former employees (the only persons called by the petitioning creditors to prove their allegations as to Perry's insolvency) evidences any tax liens, mechanics liens, judgments, recent transfers of property, depleted bank accounts or unpaid back wages. Virtually all of the indicia of insolvency are absent in this matter—the only lien on Perry's real or personal property is a $1,500. mortgage covering real estate, acquired in 1946, on which all the annual payments of interest have been paid.[6]

Section 1(19) of the Bankruptcy Act: [7]

"A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts."

"The courts have been insistent that inability to pay one's debts as they mature neither constitutes, nor is tantamount to, the 'required degree' of insolvency specified under the bankruptcy definition." Collier on Bankruptcy (14th Ed. 1969) § 1.19, p. 104, citing Maplcroft Mills v. Childs (4th Cir. 1915) 226 F. 415.

The undisputed evidence adduced at the hearing pertaining to the alleged preferential transfer to the North Carolina National Bank at Tryon, North Carolina, shows that, during October 1971, without the consent of, notice to, or instructions from Perry, the bank applied $50,000 of Perry's funds, on deposit at the bank, to the payment of a note held by the bank which was not yet due. Perry's knowledge of the transfer came to him through a memorandum from the bank advising him of this *fait accompli.*

In disposing of the alleged second act of bankruptcy, it is sufficient to point out that the petitioning creditors have not proved Perry to have been insolvent at the time that the bank applied the $50,000 from his bank account to the payment of his note. Consequently, it is not necessary to pass on the bank's right of set-off existing under the Bank-

5. Starfred Properties v. Ettinger (2d Cir. 1943) 131 F.2d 575; In re Utrecht Coal Co. (2d Cir. 1933) 63 F.2d 745; In re Ross & O'Brien Iron Works (2d Cir. 1932) 58 F.2d 961; Lansing Boiler & Engine Works v. Joseph T. Ryerson & Son (6th Cir. 1904) 128 F. 701.

6. Perry testified that the holder of the mortgage preferred receiving the interest rather than having the principal obligation satisfied.

7. 11 U.S.C. § 1(19).

ruptcy Act on the question of whether or not—aside from the matter of insolvency—the bank's action constituted a preference such as is proscribed by the second act of bankruptcy.[8]

Nonetheless, it is interesting to observe the general rule that creditor banks may set-off a deposit of a debtor, even though such deposit was made within four months of bankruptcy, either prior to actual filing in bankruptcy of such debtor or subsequent thereto; this is true even where the debtor was insolvent at the time of the deposit and where the bank knew of such insolvency. 4 Collier on Bankruptcy (14th Ed. 1969) Section 68.16 p. 929.

The United States Court of Appeals for the Fourth Circuit following the general rule, has said:

"It is firmly established that the act of a bank in taking over the deposit of a bankrupt and setting it off against his debt to the bank under Section 68 (U.S.C. Title 11, § 108) is not a *transfer* within the meaning of the other sections referred to, provided the deposits were made in good faith and not as a cloak for a payment or other forbidden transaction." Joseph F. Hughes & Co. v. Machen (4th Cir. 1948), 164 F.2d 983, 986.

In holding that deposits and subsequent set-offs are not transfers, this circuit relies on the rationale that deposits are not in the form of a sale or parting with property as a payment, mortgage or security; that they do not deplete the estate of the depositor but rather result in a substitution of credit for various forms of commercial paper or currency; and that they are withdrawable at the will of the depositor. Joseph F. Hughes & Co. v. Machen, *supra*; Citizen's National Bank v. Lineberger (4th Cir. 1930) 45 F.2d 522, 527.

In *Lineberger, supra,* the court, speaking through Judge Parker, held a deposit and subsequent set-off may not be attacked as preferential if the deposit is *bona fide* "even though the bank, by applying it as a set-off, may have obtained a greater percentage on a debt which it holds against its insolvent depositor than his other creditors can obtain."

Judge Soper in *Machen, supra,* 164 F. 2d p. 988, pointed out that the court would be quick to pierce the veil of an attempted build-up of assets with the bank for payment purposes in the form of deposits and that such transactions would meet the definitions of a preference if other conditions were met.

The mere fact that, at the time a bank applies its depositor's balance on his indebtedness to the bank, the bank is charged with knowledge of the depositor's insolvency (if such be the case), does not make the application a preferential payment. New York County National Bank v. Massey, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380; Re George M. Hill Co. (7th Cir. 1904), 130 F. 315.

"It is true, as we have seen, that in a sense the bank is permitted to obtain a greater percentage of its claim against the bankrupt than other creditors of the same class, but this indirect result is not brought about by the transfer of property within the meaning of the law." New York County National Bank v. Massey, *supra.*

As to the allegation of Perry's having committed the fifth act of bankruptcy, the petitioning creditors have the burden of proving that Perry, while insolvent or unable to pay his debts as they matured, procured, permitted or suffered voluntarily or involuntarily the appointment of a receiver to take charge of his property.[9]

The fifth act of bankruptcy may be committed if a receiver is appointed while a debtor is insolvent in either the equity (an inability to meet the debts

8. Bankruptcy Act, section 3a(2), 11 U.S.C. § 21a(2).

9. National Ref. Co. v. Pennsylvania Petroleum Co. (8th Cir. 1933) 66 F.2d 914, cert. den., 291 U.S. 667, 54 S.Ct. 453, 78 L.Ed. 1058.

as they mature) or the bankruptcy sense (an insufficiency of assets at a fair valuation to meet the debts in full).[10]

█ The circumstances of the *ex parte* appointment of a receiver, by the Court of Common Pleas, with no notice to and without the knowledge or consent of Perry, precludes successful argument that Perry "procured" or "permitted" the appointment of the receiver. Then, did he "suffer" the appointment of the receiver?

The record shows that Perry did not know anything about the appointment of a receiver of his property until he was served with a copy of the order of the Court of Common Pleas; and that immediately thereafter he employed counsel who filed Notice of Motion in the State Court to terminate the receivership.

This involuntary bankruptcy proceeding was instituted only eight days after the *ex parte* appointment of the receiver by the State Court.

Black's Law Directory (4th Ed. 1951) defines "suffer":

"To allow, to admit, or to permit. Gregory v. Marks, C.C.Ill., Fed.Case No. 5,802; 10 Fed.Case 1198; Osborne v. Winter, 133 Cal.App. 664, 24 P.2d 892. It includes knowledge of what is to be done under sufferance. First Nat. Bank & Trust Co. of Port Chester v. New York Title Ins. Co., 171 Misc. 854, 12 N.Y.S.2d 703, 709.

"To suffer an act to be done or a condition to exist is to permit or consent to it; to approve of it, and not to hinder it. It implies knowledge, a willingness of the mind and responsible control or ability to prevent. Wilson v. Nelson, 183 U.S. 191, 22 S.Ct. 74, 46 L.Ed. 147; Selleck v. Selleck, 19 Conn. 505; Gregory v. U. S., C.C. N.Y., Fed.Case No. 5,803; 10 Fed.Case 1197; In re Thomas, D.C.Pa., 103 F. 272, 274; Allison v. Commonwealth, 221 Ky. 205, 298 S.W. 680."

█ Suffer implies knowledge of the thing suffered or done; and a forfeiture for suffering a thing to be done cannot be sustained without proof of knowledge. Gregory v. United States, 10 Fed.Case 1195, 1197.

The following interesting discussion of the use of "permit" and "suffer" in the Bankruptcy Act is from Duncan v. Landis (3rd Cir. 1901) 106 F. 839, 848:

"The act with which we are here concerned is the debtor's having suffered or permitted, while insolvent, a creditor to obtain a preference, etc. Both the words, 'suffer' and 'permit,' while they do not necessarily connote strong affirmative action, do involve such an exercise of the will as effects results. The 'suffering or permitting' a creditor to obtain a preference, within the meaning of clause 3, may consist of connivance between the debtor and creditor. But in any event there must be some act of the will on the part of the debtor, whether by way of active procurance or voluntary acquiescence. Slight evidence of an affirmative character might suffice to establish such connivance or acquiescence, but there must be some. 'Noscitur a sociis' is an established rule in the interpretation of statutes. 'Associated words are understood to be used in their cognate sense.' There can be no doubt that the word 'suffer' is here a synonym of 'permit.' It is the active and transitive verb, and not the intransitive. Its meaning as here used is that given by all lexicographers, Webster defining it thus: '(4) To allow; to permit; not to forbid or hinder; to tolerate. "I suffer them to enter and possess." Milton.' Worcester gives as one of the meanings: '(3) To allow; to admit; to permit. "God is faithful, who will not suffer you to be tempted above that ye are able." I Cor. x. 13.' The Century gives as one meaning of the word: 'To refrain from hindering; allow; permit; tolerate. "Suffer the little children to come unto me, and

---

10. 1 Collier on Bankruptcy (14th Ed. 1969) § 3.505, p. 506.

forbid them not." Mark, x. 14.' There can be no doubt, then, that 'suffer' or 'permit,' as used in this section, denotes a voluntary act of the debtor. They do not denote or describe acts of the creditor. The debtor must by this act consciously and voluntarily in some degree co-operate with the creditor in 'obtaining' the preference. He cannot suffer or permit what he cannot hinder. A preference obtained under such circumstances is not his act, and the consequence of bankruptcy, as denounced in this section, attaches only to his act."

At the time the involuntary petition was filed in the Federal court, time to answer the State court complaint had not expired. Perry, through his counsel, has vigorously opposed the petitioning creditors' actions in both courts and has taken affirmative steps to discharge the receivership in the State court. The actions of Perry in both the State and the Federal courts negate that he has been either passive, indifferent, or has abstained from preventive action.[11]

The petitioning creditors having failed to prove that Perry "procured, permitted or suffered" the appointment of a receiver renders unnecessary a determination of Perry's insolvency in the *equity* sense.[12]

 Finally, as to the allegation of Perry's committing the sixth act of bankruptcy, the petitioning creditors showed only that they (and other creditors) had received the following communication, dated October 15, 1971:

"To Whom It May Concern:
PLEASE TAKE NOTE!

Ed Perry Auto Parts is temporarily experiencing financial difficulty and is unable to meet obligations due at this time. As a result of this, there will be a meeting of all creditors of the company at Ed Perry's-Park St.-Inman, S. C. on Monday, Oct. 25/71 at 2 P.M. for an informal discussion as to what can be done for the best interest of all concerned. Please send a representative.

Arnold R. Merchant, Atty. at Law
Liberty St. Office Bldg.
Spartanburg, S. C.
Telephone #803 582-5975"

"A person commits the sixth act of bankruptcy by having 'admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt.' Only when the following requisites are present, however, has the act been consummated: (1) the debtor must admit that he is unable to pay his debts; (2) the debtor must admit his willingness to be adjudged a bankrupt; and (3) *the admission of both these facts must be in writing*." (Italics added) 1 Collier on Bankruptcy (14th Ed. 1969) § 3.601, p. 503.

The burden of showing that the bankrupt made the admission required for the sixth act of bankruptcy lies upon the petitioning creditors;[13] yet there is no writing in the record wherein Perry admitted his willingness to be adjudged a bankrupt.

After careful consideration of the evidence taken, stipulations made and arguments of counsel, I make and report the following Findings of Fact, Conclusions of Law, and Recommendations, as follows:

### FINDINGS OF FACT

1. Perry has his principal place of business in, and is a resident of, South Carolina, and has resided therein for

---

11. "It would seem, therefore, that to permit or suffer implies no affirmative act, —involves no intent. It is merely passivity, indifference, abstaining from preventive action." In re Thomas (W.D. Pa.1900), 103 F. 272, 274.

12. Earlier in this report it was pointed out that the petitioning creditors had failed to prove that Perry was insolvent in the *bankruptcy* sense.

13. Dreyer v. Greene, 267 F.2d 44 (5th Cir. 1959) ; 1 Collier on Bankruptcy, 14th Ed., Section 3.609, page 521.

more than six months immediately preceding the November 3, 1971 filing of the involuntary petition in bankruptcy.

2. Perry owes debts in excess of $1,500. as of November 3, 1971.

3. On November 3, 1971, Perry was indebted to the petitioning creditor, Fulton Sylphon Division, Robertshaw Controls Company, in the sum of $6,608.83 for goods sold and delivered, but was not presently payable.

4. On November 3, 1971, Perry was indebted to the petitioning creditor, Mohawk Rubber Company, in the sum of $24,622.08 for goods sold and delivered.

5. On November 3, 1971, Perry was indebted to the petitioning creditor, Cooper Tire & Rubber Company, in the sum of $173,894.52.

6. Perry produced before this court his books, papers and accounts; and submitted himself for examination and testimony on all matters tending to establish solvency or insolvency or his ability to pay or inability to pay his debts as they matured.

7. The action of the North Carolina National Bank in October 1971 in which the bank account of Perry was reduced by $50,000—said sum being applied on the payment of Perry's note to the bank which had not matured at the time—was not done by or with the knowledge or consent of Perry.

8. The petitioning creditors have failed to establish by competent evidence that Perry was insolvent at any time within the four-month period prior to the filing of the involuntary petition.

9. Perry did not procure, permit or suffer voluntarily or involuntarily the appointment of the receiver by the state court.

10. Perry did not admit in writing his willingness to be adjudged a bankrupt.

## CONCLUSIONS OF LAW

On the basis of the foregoing findings of fact, I conclude as a matter of law that:

1. This court has jurisdiction of the parties and of the subject matter.

2. The petitioning creditors have failed to sustain their burden of proving that Perry has committed any one, or more, of the three alleged acts of bankruptcy.

3. The petitioning creditors have failed to prove that Perry is subject to adjudication as an involuntary bankrupt.

## RECOMMENDATION

I, therefore, recommend that this court approve the above findings of fact and conclusions of law, and pass its order dismissing, for want of jurisdiction, the involuntary petition in bankruptcy filed on November 3, 1971, by Fulton Sylphon Division, Robertshaw Controls Company, Mohawk Rubber Company, and Cooper Tire & Rubber Company, against Ed Perry, taxing the costs in said matter against the petitioning creditors.

Respectfully submitted,

(s) J. Bratton Davis
J. Bratton Davis
Referee in Bankruptcy

Columbia, South Carolina
December 23, 1971.