**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 15-2209**

─────────

In Re:  JAMES EDWARDS WHITLEY,

                    Debtor.

--------------------------------

CHARLES M. IVEY, III, Chapter 7 Trustee for the Estate of James Edwards Whitley,

                    Plaintiff – Appellant,

          v.

FIRST CITIZENS BANK & TRUST COMPANY,

                    Defendant – Appellee.

─────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., Chief District Judge.  (1:14-cv-01067-WO; 12-02028; 10-10426)

─────────

Argued:  October 26, 2016                    Decided:  January 31, 2017

─────────

Before GREGORY, Chief Judge, WYNN, Circuit Judge, and DAVIS, Senior Circuit Judge.

─────────

Affirmed by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Wynn and Senior Judge Davis joined.

─────────

**ARGUED:**  Charles Marshall Ivey, III, IVEY, MCCLELLAN, GATTON & SIEGMUND, L.L.P., Greensboro, North Carolina, for Appellant.  Gary J. Rickner,

WARD AND SMITH, P.A., Greenville, North Carolina, for Appellee.  **ON BRIEF:** Charles Marshall Ivey, IV, IVEY, MCCLELLAN, GATTON & SIEGMUND, L.L.P., Greensboro, North Carolina, for Appellant.  Benjamin E. F. B. Waller, WARD AND SMITH, P.A., Greenville, North Carolina, for Appellee.

———————————

GREGORY, Chief Judge:

This appeal is from an adversary proceeding in the bankruptcy of debtor James Edwards Whitley. Charles M. Ivey III, the Chapter 7 trustee for Whitley's estate, appeals the district court judgment affirming the bankruptcy court's award of summary judgment for First Citizens Bank and Trust Company ("First Citizens Bank" or "the Bank") on the trustee's claim that certain deposits and wire transfers to Whitley's personal checking account at First Citizens Bank are avoidable as fraudulent transfers. We find that the transactions at issue do not constitute transfers within the meaning of the Bankruptcy Code, and we therefore affirm.

I.

This case arises out of Whitley's bankruptcy, which in turn stems from Whitley's Ponzi scheme wherein he defrauded his friends, family, and acquaintances out of millions of dollars under the guise of investing their money in a purchase order factoring contract business.[1] This scheme unraveled in late 2009 when Whitley was unable to secure additional funds to continue his fraudulent operations.

---

[1] The details of Whitley's fraudulent scheme are recounted in our earlier opinion affirming his criminal sentence for wire fraud and money laundering. *See United States v. Whitley*, 544 F. App'x 154 (4th Cir. 2013). As we explained there,

> A "purchase order factoring contract" is needed when a supplier requires that a buyer pay for goods by cash on delivery, but the buyer wants to purchase the goods on 30 to 60 day terms. The purchase order contractor agrees to pay the supplier upon delivery of

(Continued)

3

In early 2010, a group of eight individual creditors filed with the bankruptcy court an involuntary petition against Whitley for relief pursuant to 11 U.S.C. § 303. The petition was granted on March 30, 2010. In 2012, after more than two years of bankruptcy proceedings and Whitley's conviction for wire fraud and money laundering, the trustee filed a complaint on behalf of the bankruptcy estate against First Citizens Bank, where Whitley had a personal checking account in his name. Whitley had used this account to deposit funds, receive wire transfers, and write checks as part of his fraudulent scheme in the two years preceding the filing of the involuntary bankruptcy petition. Administrative Record ("A.R.") 482. In the complaint, the trustee alleged, among other things,[2] that certain deposits and wire transfers to Whitley's account, including personal and cashier's checks and wire transfers from Whitley's "investors," constituted transfers from Whitley to the Bank that were made with the actual intent to hinder, delay, or defraud creditors, and that they were therefore avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A). *Id.*

The bankruptcy court granted summary judgment for First Citizens Bank on the grounds that although the transactions were transfers from Whitley to the Bank, those

---

the goods, which enables the buyer to delay payment for a specified period of time.

*Id.* at 155 n.1. Whitley did not invest any of his victims' funds in such a business; he instead spent their funds both to further his Ponzi scheme and for his own personal use. *Id.* at 156.

[2] The bankruptcy court granted the Bank's motion to dismiss the trustee's other claims, and the trustee did not appeal the dismissal of those claims.

transfers neither diminished the bankruptcy estate nor placed the funds beyond the creditors' reach, and they were therefore not avoidable as fraudulent transfers. The district court affirmed on the same grounds. The trustee timely appealed to this Court.

## II.

We review de novo the bankruptcy court's and the district court's legal conclusions and review for clear error the bankruptcy court's factual findings. *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). And "[i]n reviewing the grant of summary judgment, we can affirm on any legal ground supported by the record and are not limited to the grounds relied on by the district court." *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993).

## A.

The trustee alleges that the transactions at issue should be avoided as fraudulent transfers made from Whitley to the Bank with the actual intent to hinder, delay, or defraud Whitley's creditors. The trustee argues that the bankruptcy and district courts erred by requiring that the transactions diminish the bankruptcy estate in order to qualify as fraudulent transfers under § 548(a)(1)(A). Where actual fraudulent intent is present, the trustee contends, there is no requirement that the transactions diminish or otherwise move property away from the bankruptcy estate.

5

First Citizens Bank counters that the bankruptcy and district courts properly required that the transactions diminish the bankruptcy estate. The Bank points out that § 548(a)(1)(A) requires that an avoidable transfer be one "of an interest of the debtor in property," which, the Bank maintains, federal courts have interpreted to mean that the property would have been in the estate if not for the transfer. The Bank also emphasizes the underlying policy of fraudulent transfer law, which is to prevent depletion of the estate. Here, where Whitley deposited checks and received wire transfers in his personal checking account, the Bank argues that he neither transferred his interest in the funds to the Bank nor diminished the bankruptcy estate, since Whitley at all times had access to and control of the funds.

We asked the parties to address at oral argument the significant threshold question of whether the transactions at issue are even transfers within the meaning of § 101(54) of the Bankruptcy Code, such that we might proceed to consider whether the transactions are *avoidable* transfers under § 548(a)(1)(A). The trustee argued that the transactions did constitute transfers under § 101(54)'s broad definition, which includes any "dispos[al] of or parting with [] property." The trustee contended that depositing and accepting funds into a bank account as Whitley did here constitutes parting with property under § 101(54) because of the Bank's access to and interest in the funds. First Citizens Bank responded that no such parting with property occurred. It argued that there was no change to Whitley's rights and interests in the property after the deposits and wire transfers because Whitley still had access to his account, he could withdraw the funds at will, and any funds in the account were available to the bankruptcy estate.

6

We now find that the transactions at issue do not constitute transfers within the meaning of the Bankruptcy Code. Because our resolution of this threshold question disposes of the appeal, we need not reach the parties' other arguments.

B.

Under 11 U.S.C. § 548(a)(1)(A), a "trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily [] made such transfer . . . with actual intent to hinder, delay, or defraud any" creditor. The Bankruptcy Code defines "transfer," in pertinent part, as any "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with[] (i) property; or (ii) an interest in property." *Id.* § 101(54)(D). The threshold question here is whether the transactions at issue are transfers within the meaning of § 101(54), such that they might be considered under § 548.

Congress sought to make "[t]he definition of transfer" in the Bankruptcy Code "as broad as possible," drafting it to include "any transfer of an interest in property," including "[a] deposit in a bank account or similar account." S. Rep. No. 95-989, at 27 (1978) (stating also that "any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property"). The Senate Report did not, however, distinguish between different types of deposits; it merely articulated the general principle that "transfer" is meant to encompass an array of transactions. Courts are thus divided on whether § 101(54)'s definition of "transfer," even interpreted as broadly as

7

Congress intended, includes a debtor's deposits in his own unrestricted bank account in the regular course of business.

Some courts have found that these types of transactions do constitute "transfers" within the meaning of § 101(54). For instance, in *In re Schafer*, 294 B.R. 126 (N.D. Cal. 2003), where the debtor opened a new account and deposited his funds there because a creditor had attached his old account, the court found that "[t]here is no ambiguity around the definition of transfer, deposits in bank accounts clearly qualify." *Id.* at 132. And in *Meoli v. Huntington Nat'l Bank*, No. 1:12-CV-1113, 2015 WL 5690953, at *9-10 (W.D. Mich. Sept. 28, 2015), the court found that a customer's deposits in his bank account were transfers and that the bank was the immediate transferee as a result of the deposits. *See also Redmond v. Tuttle*, 698 F.2d 414, 417-18, 417 n.8 (10th Cir. 1983) (finding that deposits in debtors' checking account were transfers within the meaning of § 101(54)). These courts looked to the Senate Report's statement that the definition of "transfer" should be read as broadly as possible, as well as the broad language of § 101(54) itself.

But courts have just as strongly concluded that deposits by a debtor into his own unrestricted checking account in the regular course of business do *not* constitute "transfers" within the meaning of § 101(54). The Fourth Circuit said precisely that almost ninety years ago:

> An ordinary deposit in a bank, however, is not a "transfer" . . . . It . . . results in substituting for currency, bank notes, checks, drafts, and other bankable items a corresponding credit with the bank, which may be checked against, and which provides the depositor with the medium of exchange in universal use in the transaction of business. . . . [I]f the deposit is in reality a deposit, made in good faith as such, subject to the withdrawal of the depositor, and not

8

> made as a cloak for a payment or other forbidden transaction, it is not a transfer within the meaning of the Bankruptcy Act . . . .

*Citizens' Nat. Bank of Gastonia, N.C. v. Lineberger*, 45 F.2d 522, 527-28 (4th Cir. 1930); *see also Bank of Commerce & Trs. v. Hatcher*, 50 F.2d 719, 720 (4th Cir. 1931) (same) (citing *Lineberger*, 45 F.2d at 527).  The *Lineberger* and *Hatcher* courts relied heavily on language from the Supreme Court, which had previously stated that "[i]t cannot be doubted that, except under special circumstances, . . . a deposit of money upon general account with a bank creates the relation of debtor and creditor. . . .  It creates an ordinary debt, not a privilege or right of a fiduciary character."  *N.Y. Cty. Nat'l Bank v. Massey*, 192 U.S. 138, 145 (1904).  And this "ordinary debt," with the Bank's corresponding obligation to make the funds available at the depositor's will, does not change the debtor's interest in the funds.  *See id.*  Courts have interpreted *Massey* to say that this type of transaction therefore does not constitute a transfer within the meaning of the Bankruptcy Code.  *See, e.g.*, *In re Consol. Pioneer Mortg. Entities*, 211 B.R. 704, 714-15 (S.D. Cal. 1997), *aff'd in part*, *rev'd in part on other grounds*, 166 F.3d 342 (9th Cir. 1999).

Though *Lineberger*, *Hatcher*, and *Massey* all predate the current Bankruptcy Code, courts continue to rely on these cases in similarly finding that certain deposits do not constitute transfers under § 101(54).  In *Consolidated Pioneer Mortgage*, the court found that "[n]otwithstanding [§ 101(54)'s] broad definition [of 'transfer'], it is well settled that a customer's bank deposits into its own unrestricted checking account are not transfers within the meaning of the Bankruptcy Code."  *Id.* at 714 (citing *Massey*, 192

9

U.S. at 145).  And relying on the passage from *Lineberger* quoted above, the court added, "Although the customer 'disposes of' or 'parts with' the deposited items in exchange for the credit, this 'parting' is not a transfer for bankruptcy purposes because, in effect, the assets available to the customer have not changed."  *Id.* at 714-15.  And at least one bankruptcy court in this Circuit has similarly applied *Lineberger* to determine that these types of transactions are not transfers under § 101(54).  *See In re Rood*, 459 B.R. 581, 606 (Bankr. D. Md. 2011), *aff'd*, 482 B.R. 132 (D. Md. 2012), *aff'd sub nom. S. Mgmt. Corp. Ret. Trust v. Rood*, 532 F. App'x 370 (4th Cir. 2013), and *aff'd sub nom. S. Mgmt. Corp. Ret. Trust v. Jewell*, 533 F. App'x 228 (4th Cir. 2013) ("[W]ith respect to those 'transfers' that were actually deposits of funds into accounts controlled by [the debtor], the court observes that 'an ordinary deposit in a bank . . . is not a "transfer."'" (quoting *Lineberger*, 45 F.2d at 527)).  According to these courts, such transactions do not change the debtor's possession, custody, or control of the property because the transactions result in only a substitution of the property for a corresponding credit—a credit that may be redeemed by the debtor at any time.

Other bankruptcy and circuit courts, considering the issue both before and after the enactment of the current Bankruptcy Code, agree.  *See In re Prescott*, 805 F.2d 719, 729 (7th Cir. 1986) ("Deposits into bank accounts clearly can be transfers under the new Bankruptcy Code. . . .  However, . . . to the extent a deposit is made into an unrestricted checking account, in the regular course of business and withdrawable at the depositor's will, it is not avoidable by the trustee . . . .") (citing *Katz v. First Nat'l Bank of Glen Head*, 568 F.2d 964, 969 (2d Cir. 1977)); *Katz*, 568 F.2d at 969 ("It is well settled that

10

deposits in an unrestricted checking account, made in the regular course of business, do not constitute transfers within the meaning of the Bankruptcy Act."); *In re Tonyan Const. Co., Inc.*, 28 B.R. 714, 728-29 (Bankr. N.D. Ill. 1983) (stating that "[o]rdinarily, a deposit in an unrestricted checking account does not constitute a parting with property, because it '[] results in substituting for currency, bank notes, checks, drafts, and other bankable items a corresponding credit with the bank, which may be checked against'" (quoting *Lineberger*, 45 F.2d at 527)); *In re Perry*, 336 F. Supp. 420, 425 (D.S.C. 1972) (finding that "deposits and subsequent set-offs are not transfers" because they "result in a substitution of credit for various forms of commercial paper or currency" and "are withdrawable at the will of the depositor").

While recognizing that some courts read § 101(54) more broadly, we are persuaded by the precedent in this Circuit and our sister circuits that the better interpretation of "transfer" does not include a debtor's regular deposits into his own unrestricted checking account—a specific circumstance not explicitly contemplated by the Senate Report. When Whitley made deposits and accepted wire transfers into his checking account at First Citizens Bank, he continued to possess, control, and have custody over those funds, which were freely withdrawable at his will. Indeed, any funds in the account were at all times part of the bankruptcy estate. The Bank's mere maintenance of Whitley's checking account does not suffice to make deposits and wire transfers in that account "transfers" from Whitley to the Bank, and we decline to read § 101(54) to say otherwise.

11

We express no opinion on whether other types of deposits, such as those made to restricted checking accounts, would constitute transfers under § 101(54). Our holding is limited to the narrow circumstances presented here: when a debtor deposits or receives a wire transfer of funds into his own unrestricted checking account in the regular course of business, he has not transferred those funds to the bank that operates the account. When the debtor is still free to access those funds at will, the requisite "disposing of" or "parting with" property has not occurred; there has not been a "transfer" within the meaning of § 101(54).

Contrary to the bankruptcy and district courts, we find that the deposits and wire transfers at issue here are not § 101(54) "transfers" from Whitley to First Citizens Bank. The transactions therefore cannot be avoidable transfers under § 548(a). Accordingly, summary judgment for First Citizens Bank is proper on this narrower ground.

III.

For all of these reasons, the district court's judgment is

*AFFIRMED.*

12