KORMAN, District Judge,
concurring in part and concurring in the judgment:
I concur in the decision to reverse and remand to the bankruptcy court, and join all but Part II of the majority opinion. I agree that, under the circumstances of this case, applying 11 U.S.C. § 547(b)(5)’s “greater amount” test requires us to construct a hypothetical liquidation, and that in so doing, we may consider whether a reasonable trustee would bring and win a preference action within the hypothetical Chapter 7 proceedings. I cannot, however, join in the liquidation that the majority constructs in this case, because I cannot agree that the entirety of the $526,402.05 deposit was itself a preferential transfer subject to clawback under 11 U.S.C. § 547.
The majority is correct that Bernard v. Sheaffer, 96 F.3d 1279 (9th Cir. 1996), binds us to begin with the premise that a bank deposit is a “transfer” under the modern Bankruptcy Code, see also Maj. Op. at 1242-44.[1] But the ultimate issue is not merely whether Tenderloin’s deposit was a transfer, but whether it was a preferential one. On the latter question, the majority’s position runs headlong into Justice Brandeis’s seminal opinion in New York County National Bank v. Massey, 192 U.S. 138, 147, 24 S.Ct. 199, 48 L.Ed. 380 (1904). The majority does not ignore Massey, nevertheless, its treatment of that ease almost totally elides what Massey has to say about the central question presented here.
Instead of engaging Massey’s analysis of what makes a preference, the majority opinion focuses at length on whether, in light of the expanded definition of “transfer” that Congress adopted in 1978, Massey still means that deposits are not transfers. The trouble is that Massey never meant that at all. The Massey Court “never said that customer deposits were not transfers.” Meoli v. The Huntington Nat’l Bank (In re Teleservices Grp., Inc.), 469 B.R. 713, 745 (Bankr. W.D. Mich. 2012) (emphasis added), cited at Maj. Op. at 1244-45. Rather, it said that such deposits were not preferential within the meaning of the bankruptcy laws solely because they create a right of setoff in a creditor. Massey, 192 U.S. at 147, 24 S.Ct. 199 (“[A] deposit of money ... in a bank does not operate to diminish the estate of the depositor.” (emphasis added)).
*1247 The question is whether Massey’s, holding, that the creation of a setoff right does not suffice to make a preference, has survived Congress’s creation of the contemporary scheme governing preferences and setoff. In that respect, the Massey Court faced a similar statutory landscape to the one we do now. The 1898 Act provided that an insolvent debtor’s transfer was preferential only if it “enable[d] any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.” § 60(a), 30 Stat. 544, 562. Nevertheless, it expressly authorized the setoff of mutually owing debts without providing an exception, applicable when a setoff would improve the bank’s position. Id. § 68(a), 30 Stat. at 565. The Court held that the preservation of setoff indicated Congress’s intent that the creation and exercise of a setoff right exist as an exception to the Act’s definition of a preferential transfer. Massey, 192 U.S. at 147, 24 S.Ct. 199. After all, setoff (and the creation of a setoff right) always favors offsetting creditors, who “reeeive[] a preference in the fact that, to the extent of the set-off [right], . [they are] paid in full.” Id. As Justice Brandéis explained, to “enlarge the scope of the statute defining preferences so as to prevent setoff in cases coming within the terms of [the provision authorizing setoff]” would “defeat” Congress’s choice to preserve setoff under those terms. Id.
In enacting the 1978 Act, or any of the numerous subsequent amendments to the Bankruptcy Code, Congress could have included the creation or exercise of a setoff right in the roster of transactions that are avoidable under § 547, but it did not. Instead, it preserved the basic feature of the 1898 Act on which Massey relied — the treatment of preferential transfers and setoff rights in separate provisions subject to different rules. Like § 68(a) of the 1898 Act, § 553 of the post-1978 Code is an entirely separate provision that subjects setoffs, exclusively, to different rules than those applicable to the recovery of preferences generally. See, e.g., Woodrum v. Ford Motor Credit Co. (In re Dillard Ford, Inc.), 940 F.2d 1507, 1512 (11th Cir. 1991).
Because that structure is unchanged, to hold that the creation of a setoff right that the Code preserves under the terms of § 553 may be preferential under § 547 would, as in Massey, “operate to enlarge the scope of the statute defining preferences so as to prevent [the exercise of] set-off in cases coming within the terms of [§ 553].” As in Massey, a preference is still defined as a transfer that leaves the receiving creditor better off than it otherwise would have been. See 11 U.S.C. § 547(b)(5), see also Maj. Op. at 1244 (“The pertinent question is whether the deposit depletes the assets of the estate available for distribution to creditors.”). Setoff rights are still preserved, subject to more forgiving limitations than transfers generally. Compare 11 U.S.C. § 553(b) with § 547(b).[2] And as a matter of econom *1248 ic reality, the creation and exercise of those rights still advantage some creditors in a way that would — but for Massey’s limiting construction — meet the hornbook definition of a preference.
Concededly, Massey interpreted the text of a different statute than the one before us today. Nevertheless, the ultimate question in any statutory interpretation case is the intent of Congress, and the Supreme Court has instructed that “Congress is presumed to be aware of a[ ] ... judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.” Lorillard v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). There is no indication that Congress meant to disrupt Massey’s bedrock holding when it enacted a new bankruptcy law, but preserved the structure that formed the essential basis for the Supreme Court’s analysis. In such circumstances, we should be mindful not only of Congress’s intent, but of the fact that “only [the Supreme] Court may overrule one of its precedents.” See Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (per curiam).
In a footnote, the majority opinion also argues1 that this ease is distinguishable from Massey because “the accounts were pledged as security on an antecedent loan, and the deposit itself would render BOTW fully secure.” Maj. Op. at 1244 n.13. Certainly, the creation of a new lien would have made a preferential transfer. Nevertheless, the fact that Tenderloin took the funds out of escrow and deposited the money made no difference to the bank’s security position. All of Tenderloin’s personal property was subject to the same floating lien, including its general intangibles. Those included Tenderloin’s contractual right to be paid the funds out of escrow. See In re Merten, 164 B.R. 641, 643 (Bankr. S.D. Cal. 1994). Tenderloin’s interest in those funds would have been identically encumbered, and BOTW identically secured, if the money had stayed in escrow indefinitely, or transferred out of escrow and into a safe in Tenderloin’s offices.
Because Massey’s reasoning applies with the same force today as it did in 1904, I cannot join in the majority’s holding that the $526,402.05' deposit was a preference subject to attack under § 547. I would have the hypothetical bankruptcy court treat Tenderloin’s account as containing the full $564,115.92 as of the petition date, and proceed to apply 11 U.S.C. § 553 to determine what portion of that amount BOTW could set off against Tenderloin’s $190,595.50 debt.[3]
Section 553 does not preserve setoff rights without limitation. Rather, creditors may only set off subject to the strictures imposed by § 553(b), a “miniature preference provision akin to [§ 547].” Eckles v. Petco Inc., Interstate (In re Balducci Oil Co., Inc.), 33 B.R. 847, 852 (Bankr. D. Colo. 1983). Much like § 547(b) does for transfers, § 553(b) directs us to apply an improvement-of-position test — it disallows setoff to the extent that the creditor was better secured on the date of setoff than it *1249 was on the first day it became underse-cured (or 90 days before bankruptcy, if an insufficiency existed at the start of the preference period).
To be sure, there is some question whether § 553(b) applies to limit actual post-petition setoffs. See Collier on Bankruptcy ¶ 553.09[2][c] (noting division of authority). But as the Fifth Circuit has noted, the safeguards of § 553(b) are unnecessary post-petition in an actual liquidation, where the need to proceed by application to lift the automatic stay gives the bankruptcy judge an opportunity to weigh the equities of allowing or denying the creditor’s claim. Braniff Airways, Inc. v. Exxon Co., U.S.A, 814 F.2d 1030, 1041 n.13 (5th Cir. 1987).
By contrast, in a hypothetical liquidation, there is no such gatekeeper to protect other claimants. There is of course no actual bankruptcy judge available to exercise discretion in such a case, and it would push the already somewhat strained boundaries of our hypothetical analysis too far to exercise our own discretion, sitting as a three-headed hypothetical bankruptcy judge, weighing the imaginary equities of a fantasy liquidation. The majority asserts that this adds a new variable to what is supposed to be a controlled experiment, Maj. Op. at 1245 n.16, but so would exercising our own discretion — by substituting our judgment for that of the real bankruptcy judge.
We cannot construct a hypothetical. bankruptcy judge to review a hypothetical application to lift the stay. So to analyze a hypothetical post-petition setoff without applying § 553(b) would allow preference defendants to “have it both ways” by avoiding both the statutory improvement-in-position test and the bankruptcy court’s equitable oversight. Braniff Airways, 814 F.2d at 1041 n.13. Like the Fifth Circuit, I would “decline to let [BOTW] have it both ways,” and hold that if it wants to defend a preference action by relying “on a pre-petition right to setoff pursuant to [§ ] 553, it must comply with ... [§ ] 553(b).” Id.
The ensuing analysis is straightforward. Section 553(b) directs that an offsetting creditor cannot improve its secured position relative to where it stood on the date of the first insufficiency. At all relevant times, Tenderloin owed BOTW $190,595.50. Adopting the majority’s working assumption that on the 90th day before the petition, Tenderloin’s bank balance was $173,015.00, this left an insufficiency of $17,580.50 relative to its debt. Assuming that Tenderloin’s debt balance remained unchanged through the petition date, § 553(b) would allow BOTW to recover at most $173,015.00 in a hypothetical post-petition setoff. I assume that, like any diligent creditor, the bank would take as much as it could, claiming that amount in full.
Since BOTW received $190,595.50 during the 90 days before bankruptcy, but only would have received $173,015.00 in a hypothetical liquidation, the trustee has made out a prima facie case that the $17,580.50 difference is voidable as a preference. So like the majority, I would reverse the judgment below and send the case back to the bankruptcy court for further proceedings. I would further instruct the bankruptcy court to limit further proceedings to considering BOTW’s affirmative defenses, and then — to the extent that those do not carry the day on remand, and after resolving any factual dispute as to the amount of Tenderloin’s account balances on the relevant dates — to enter judgment for the trustee in the amount given by applying the foregoing analysis.

. The circuits are divided on this question. See Ivey v. First Citizens Bank & Trust Co. (In re Whitley), 848 F.3d 205, 208-10 (4th Cir. 2017) (noting the split and reaffirming the Fourth Circuit's pre-1978 position that deposits into one’s own bank account ordinarily are not "transfers”).

. Indeed, the bankruptcy judge in Meoli v. The Huntington Nat'l Bank (In re Teleservices Grp., Inc.), 469 B.R. 713 (Bankr. W.D. Mich. 2012), quoted by the majority, was discussing § 553(b)'s effect on the treatment of setoffs when it labeled Massey an “anachronism.” Id. at 746, quoted at Maj. Op. at 1244-45. Its point was not that Congress no longer intended the law governing setoffs to function as an exception to the law governing preferences generally, but that the enactment of § 553(b) had “addressed preferential setoffs,” by providing special terms on which they, although not subject to § 547, could be clawed back. Id. at 745-46. In any case, the court in Meoli had no cause to consider whether the creation or exercise of a setoff right could render a transfer preferential — the transfers at issue in Meoli were voidable not because they were preferential, but because they were fraudulent. See id. at 747.

. The majority opinion faults me for analyzing the permissibility of a post-petition setoff when the trustee has not raised the issue (having relied whole-hog on its argument that the deposit itself was a preference). Maj. Op. at 1245 n.16. This case raises the important question of how to measure the preferential impact of commonplace bank deposits, which will often turn on the permissible extent of a hypothetical post-petition setoff. "It is important that we address the proper legal standards” for bankruptcy courts to apply in addressing the ultimate issue presented here, and we may reach questions "intimately bound up with” that issue, though not raised by the parties, in order to do so. See Kolstad v. Am. Dental. Ass’n, 527 U.S. 526, 540, 119 S.Ct. 2118 (1999).